**STATE of Iowa, Appellee,**

v.

**Bertrum Rene BURKETT, Appellant.**

No. 83–668.

Supreme Court of Iowa.

Nov. 14, 1984.

Alfredo G. Parrish, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and Kevin Vander-Schel and James Smith, Asst. County Attys., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, CARTER, and WOLLE, JJ.

McGIVERIN, Justice.

Defendant Bertrum Rene Burkett appeals from his conviction and sentence on a

charge of first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1981). We affirm.

Defendant was charged by grand jury indictment with first-degree murder in the death of Derrica Moss, the three-year old daughter of Shirley Moss, with whom defendant had been living. Derrica died on the morning of October 22, 1982, soon after being brought to a Des Moines hospital emergency room by defendant. Defendant had been alone with Derrica at their residence for about an hour before he brought her to the hospital.

The State offered expert medical testimony that the cause of Derrica's death was internal hemorraging caused by multiple blunt force injuries inflicted within four hours of her death. Defendant testified that Derrica had choked on a glass of milk and that the blunt force injuries were caused by resuscitation efforts made first by him and later by the medical personnel at the emergency room. The State's experts testified that there was no indication that Derrica had choked on anything and that her injuries were not attributable to resuscitation efforts. The State also produced evidence from which the jury could have found previous instances of physical abuse of Derrica by defendant. Finally, a State witness, Terry Martizna, who had been a cellmate of defendant in the Polk County jail while defendant was awaiting trial, testified that in the course of a conversation he had in jail with defendant, defendant had confessed to killing Derrica.

On appeal, defendant advances six contentions in support of his request for reversal and a new trial: 1) the jury should have been instructed on various forms of assault as lesser included offenses in the first-degree murder charge; 2) the prosecution failed to disclose an alleged agreement between the State and Terry Martizna made to induce his testimony; 3) the prosecutor failed to withdraw from the case after being called as a defense witness to answer questions about the alleged agreement; 4) the chaplain of the Polk County jail should have been required to testify regarding any conversation he had with Martizna about the alleged agreement; 5) the gesture of one of the State's witnesses in striking his hand with his fist during his testimony was so prejudicial as to deny defendant a fair trial; and 6) the cumulative effect of these alleged errors was to deny defendant a fair trial. We find no merit in any of these contentions.

I. *Failure to instruct the jury on lesser included offenses.* Defendant first contends that the trial court erred in not instructing the jury on assault in its various forms under Iowa Code ch. 708 as lesser included offenses of the offense charged (first-degree murder). Although the court instructed the jury on first-degree murder (sections 707.1 and 707.2), second-degree murder (sections 707.1 and 707.3), voluntary manslaughter (section 707.4), and involuntary manslaughter (section 707.5), defendant maintains that the failure to instruct on assault violated Iowa R.Crim.P. 6(3), which provides:

In cases where the public offense charged may include some lesser offense it is the duty of the trial court to instruct the jury, not only as to the public offense charged but as to all lesser offenses of which the accused might be found guilty under the indictment and upon the evidence adduced, even though such instructions have not been requested.

We find that any error based on failure to instruct on assault was not preserved by defendant.

The record shows that defendant did not submit instructions on assault and did not object to the court's failure to give such instructions. Therefore, notwithstanding Iowa R.Crim.P. 6(3), defendant failed to preserve any error in regard to the court's not instructing on assault as a lesser included offense. *State v. Rouse*, 290 N.W.2d 911, 914 (Iowa 1980). *See also* Iowa R.Crim.P. 18(5)(f) (incorporating by reference the requirements of Iowa

R.Civ.P. 196, which states that only objections to jury instructions that are made to the trial court shall be considered on appeal).

Moreover, the record discloses that defendant's attorney, with the knowledge and consent of defendant, objected to the court's instructing the jury on any lesser included offenses whatsoever and stated that he wished to go to the jury on the charge of first-degree murder and nothing else. It seems clear that the failure to instruct on assault was in fact part of defense counsel's strategy for the case, a strategy which defendant knew and acquiesced in. Defendant cannot now complain of an error that he purposely did not preserve for review. *State v. Veverka,* 271 N.W.2d 744, 749 (Iowa 1978).

II. *Failure to disclose an alleged agreement between the State and a witness.* Terry Martizna was a State witness who testified that he and defendant had a conversation in jail prior to defendant's trial during which defendant confessed to having killed Derrica Moss after an argument with her mother. At the time of this conversation in January 1983 Martizna was awaiting trial on an unrelated charge of sexual abuse.

On February 10, 1983, Martizna pleaded guilty to third-degree sexual abuse pursuant to a plea bargaining agreement. In return for Martizna's guilty plea, the prosecutor, Kevin VanderSchel, agreed to recommend, among other things, that his sentence be served at either the Iowa Men's Reformatory at Anamosa or the Iowa Security Medical Facility at Oakdale.

On March 24 VanderSchel, who was also prosecuting defendant's case, learned that Martizna had talked extensively with defendant in the Polk County jail and might have information useful to the State. On March 27, VanderSchel and Martizna talked briefly about the possibility of Martizna's testifying against defendant. The next day they talked again at greater length. Don Nickerson, Martizna's attorney for the sexual abuse charge, was present at the discussion, as was an agent of the Iowa department of criminal investigation. After the discussion, Martizna conferred briefly with his attorney, and then indicated he would testify.

During defendant's trial, the State disclosed the details of the February plea bargaining agreement relating to the charge of sexual abuse against Martizna. The State also disclosed that Martizna, after deciding to testify, had expressed concern for his safety and received assurances that steps would be taken for his protection after the trial. Both Martizna on cross-examination and VanderSchel, on direct examination when called as a witness by defendant, denied that any understanding or deal existed between Martizna and the State regarding Martizna's testimony other than an agreement that the State would protect Martizna's safety if he testified.

Defendant contends that in fact there was a deal beyond what was disclosed by the State, and that the failure to disclose it to defendant and the jury requires reversal for a new trial. Trial court overruled defendant's motions for mistrial and new trial based on this assertion.

■ Certainly failure by the State to disclose any promise or inducement made to Martizna in order to secure his testimony would mandate a new trial. *State v. King,* 256 N.W.2d 1, 15 (Iowa 1977). However, we find defendant's case for the existence of an undisclosed deal is not supported by the record. Defendant's argument on this point rests solely on the fact that shortly after the trial VanderSchel requested the Iowa department of social services to transfer Martizna to Florida or Missouri to serve his sentence for sexual abuse. Because transfer to Florida or Missouri was not a part of the February plea bargaining agreement, defendant maintains that it can only be a term of secret agreement made between Martizna and the State to induce Martizna to testify against defendant.

Defendant's conclusion is contradicted by the testimony of both VanderSchel and Martizna's attorney for the sexual abuse charge. VanderSchel, who was called as a defense witness to answer questions about the alleged deal, denied that he had reached any understanding with Martizna regarding his testimony other than giving him assurances that measures would be taken to protect him after he testified. VanderSchel testified that even those assurances were not given as an inducement for Martizna to testify, but were given only after Martizna had reached an independent decision to testify.

Don Nickerson, Martizna's attorney for the sexual abuse charge, corroborated this testimony. At the hearing on defendant's motion for new trial Nickerson testified that at the time of the March 28 interview between VanderSchel and Martizna, he attempted to have the charge against Martizna reduced in exchange for his testimony. VanderSchel, Nickerson testified, refused to enter into any bargain whatsoever with Martizna in exchange for his testimony. Nickerson said that he and Martizna conferred briefly thereafter, and Martizna nonetheless decided to testify. It was only then, Nickerson testified, that the matter of Martizna's safety was discussed.

We conclude that there is substantial evidence in the record from which the trial court could have found that no undisclosed inducement was made to Martizna for his testimony. The transfer of Martizna to Florida or Missouri at the prosecutor's request was not inconsistent with his promise to take steps to ensure Martizna's safety. This promise appears to have been made only after Martizna decided to testify, and was in any event fully disclosed to defendant and the jury, which evaluated Martizna's credibility. The court did not abuse its discretion in denying defendant's motion for mistrial and new trial on this ground.

III. *Failure of prosecutor to withdraw.* As noted above, the prosecutor, VanderSchel, was called as a witness by the defense at the end of the second week of a three week trial to answer questions about the alleged agreement between him and Martizna regarding the latter's testimony. Defendant contends that he should be granted a new trial because of prosecutorial misconduct, which he maintains consisted of VanderSchel's failure to withdraw from the case when he knew or should have known he would be a critical defense witness.

■ Defendant concedes that a prosecutor is under no duty to withdraw simply because he is called as a defense witness. *State v. King*, 256 N.W.2d at 15. However, defendant maintains that in this case the prosecutor should have withdrawn because, having chosen to make an alleged undisclosed bargain with Martizna in return for Martizna's testimony, he knew or should have known that he would become an important defense witness for the purpose of establishing that bargain. His failure to withdraw from the case at that point, defendant argues, deprived defendant of a fair trial.

■ This issue, like that addressed in division II above, is obviously premised on the existence of a bargain between the State and Martizna regarding the latter's testimony. As noted in division II, there is ample evidence in the record to support the trial court's conclusion that no such undisclosed bargain was ever made. The court's denial of defendant's motion for new trial on the basis of prosecutorial misconduct was not error.

IV. *The jail chaplain's testimony.* As part of his effort to establish that a deal was made with Martizna to secure his testimony, defendant attempted to elicit testimony from the chaplain of the Polk County jail, David Sholes, regarding any conversations he might have had with Martizna about such a deal. Martizna, who was present during the questioning of Chaplain Sholes in the absence of the jury, expressed his desire that the communications

between himself and Chaplain Sholes remain confidential, under the privilege established by Iowa Code section 622.10. Chaplain Sholes, accordingly, declined to answer any questions about his conversations with Martizna. Based on foundational testimony by Chaplain Sholes, the court ruled that the conversations were within Iowa Code section 622.10 and sustained Martizna's assertion of privilege. Defendant contends this was error.

Section 622.10 provides in pertinent part: A ... minister of the gospel or priest of any denomination shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Chaplain Sholes testified that he was an ordained clergyman and had been a church pastor for ten years before becoming chaplain at the Polk County jail. At the jail, his duties included conducting services, supervision of a religious education program, and counseling of inmates. He testified that counseling on a confidential basis is a necessary and proper function of a minister in a jail or any other setting. He further testified that his conversations with Terry Martizna in the jail were confidential and were understood to be confidential when held, were made in his professional capacity as a clergyman, and were necessary and proper for the performance of his duties as a chaplain.

 The determination of whether or not Chaplain Sholes' conversations with Martizna were privileged under section 622.10 was within the sound discretion of the trial court. *Cf. State v. Bean*, 239 N.W.2d 556, 561 (Iowa 1976) (determination of existence of attorney-client privilege within discretion of court). Chaplain Sholes' testimony supports the conclusions

as made by the trial court, 1) that Chaplain Sholes was a minister of the gospel, 2) that his conversations with Martizna were confidential communications entrusted to him in his professional capacity, and 3) that the conversations were necessary and proper to enable Chaplain Sholes to discharge the functions of his office according to usual practice. The court's ruling that Chaplain Sholes' conversations with Martinza were privileged under section 622.10 was not an abuse of discretion. *Blossi v. Chicago & Northwestern Railway Co.*, 144 Iowa 697, 123 N.W. 360 (1909), and *State v. Brown*, 95 Iowa 381, 64 N.W. 277 (1895), cited by defendant as cases in which the privilege was held not to apply, are factually distinguishable in that the communications in those cases were neither understood to be confidential when made nor made in the furtherance of the clergymens' professional duties.

V. *The medical examiner's gesture.* Dr. Richard Wooters, chief medical examiner for Polk County, testified for the State regarding the nature and extent of Derrica Moss' injuries. During the course of his testimony, he stated that the presence of fat in her blood indicated severe trauma and accompanied these words with the gesture of twice striking his right fist into his left hand. Defendant immediately moved for mistrial on the ground that the gesture was so prejudicial as to deny him a fair trial.

After a conference in chambers on the matter, the trial court denied the motion and admonished the jury to disregard the gesture. The court later viewed a videotape of the gesture and denied defendant's motion to reconsider its ruling. In doing so, the court stated its findings that the gesture was not forceful, lasted only two to three seconds, and appeared to be inadvertent rather than consciously intended to prejudice defendant. In view of these findings the court reiterated its conclusion that admonition of the jury was sufficient to cure any prejudice caused by the gesture

and that denial of the motion for mistrial did not deprive defendant of a fair trial.

 We agree. The general rule is that improper testimony is not unduly prejudicial if the jury is admonished to disregard it. *Miller v. Town of Ankeny*, 253 Iowa 1055, 1059, 114 N.W.2d 910, 913 (1962). Although there are instances when improper testimony is so prejudicial that an admonition to disregard it is an insufficient curative, *id.*, we do not believe this is such an instance. A trial court has broad discretion in ruling on motions for mistrial and new trial. *State v. Lindsey*, 302 N.W.2d 98, 101 (Iowa 1981). In view of the court's findings that the gesture was not forceful, was short in duration, and apparently inadvertent, we believe that the admonition to the jury was sufficient to cure any prejudice that may have resulted from it. The court did not abuse its discretion in denying defendant's motion for mistrial and new trial on that basis.

VI. *Cumulative effect of errors.* Defendant's final contention is that even if none of the errors he has asserted is by itself sufficient to require reversal, their cumulative effect was to deny him a fair trial, and reversal is required for that reason. *See State v. Carey*, 165 N.W.2d 27, 36 (Iowa 1969).

We conclude that defendant has failed to demonstrate errors sufficient to be able to assert their "cumulative effect." The only arguable impropriety that appears in this record is the gesture of Dr. Wooters. However, because of the trial court's admonition to the jury, that assignment is an insufficient basis for granting a new trial. We have found no merit in defendant's other assignments of error. Defendant cannot, therefore, prevail by asserting the cumulative effect of various alleged errors.

Because we find no merit in any of defendant's contentions, whether discussed above or not, the case is affirmed.

AFFIRMED.