STATE of Iowa, Appellee,

v.

James J. JEFFRIES, Appellant.

No. 86–917.

Supreme Court of Iowa.

Oct. 19, 1988.

Barry M. Anderson, Keokuk, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden and Thomas H. Miller, Asst. At-tys. Gen., and Michael P. Short, County Atty., for appellee.

LAVORATO, Justice.

Faced in this criminal further review proceeding with a lesser-included offense issue, we take this opportunity to reexamine our approach to the lesser-included offense doctrine and conclude it should be modified.

The State argues that the court of appeals erred in reversing James J. Jeffries' insurrection conviction because of the district court's refusal to submit his requested jury instructions on lesser-included offenses. The State also argues that the defendant waived the lesser-included offense issue because he neither cited authority nor discussed the issue. *See* Iowa R.App.P. 14(a)(3). Finding no merit in the latter argument, we consider the substantive issue.

Jeffries was charged with and eventually convicted of insurrection, among other things, after he participated in an inmate uprising at the Iowa State Penitentiary. At trial Jeffries requested that the district court instruct the jury on willful disturbance and harassment of public officers and employees as lesser-included offenses of insurrection. The district court refused to do so, and on appeal Jeffries contended this refusal was erroneous.

We transferred the case to the court of appeals. That court reversed the insurrection conviction and remanded for a new trial on the insurrection charge only, reasoning that the jury should have been given Jeffries' requested instructions.

On further review, we think that under our modified approach to lesser-included offenses, the district court correctly refused Jeffries' requested instruction on willful disturbance but erroneously denied a similar request for an instruction on harassment. Accordingly, we vacate the court of appeals decision, affirm in part and reverse in part the judgment of the district court, and remand the case for a new trial on the insurrection charge only.

## I. *The Lesser–Included Offense Doctrine.*

This case presents us with an opportunity to reexamine our approach to the lesser-included offense doctrine. This subject is fraught with confusion because of the doctrine's elusiveness in its definition and application. Adding to this confusion is the interplay between the doctrine and several constitutional principles. *See* Blair, *Constitutional Limitations on the Lesser–Included Offense Doctrine*, 21 Am.Crim.L. Rev. 445, 446 (1984). Generally, the doctrine allows a trier of fact to convict a defendant of an offense less serious than the one charged. *Id.* at 445. Rooted in sixteenth-century English common law, the doctrine found its way into American jurisprudence in the late 1700's. Ettinger, *In Search of a Reasoned Approach to the Lesser–Included Offense*, 50 Brooklyn L.Rev. 191, 195 (1984).

Historically, the doctrine developed to implement the policy at common law against multiple trials for the same allegations of illegal conduct. The doctrine eventually evolved as an aid to the prosecution when there was a failure of proof of some element necessary for conviction of the offense charged. Mascolo, *Procedural Due Process And the Lesser–Included Offense Doctrine*, 50 Alb.L.Rev. 263, 265–66 (1986). Today, the defense, more often than the prosecution, is likely to seek the doctrine's application as a hedge against conviction of the greater offense. Barnett, *The Lesser–Included Offense Doctrine: A Present Day Analysis For Practitioners*, 5 Conn. L.Rev. 255, 255–56 (1972).

■ In applying the doctrine, courts must ask two questions: what is a lesser-included offense, and when should a trial court instruct on it. Koenig, *The Many–Headed Hydra of Lesser–Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Det.C.L.Rev. 41, 43.

A. *Defining the lesser-included offense.* The commentators agree that the definition of a lesser-included offense is a conceptual one. This is so because the doctrine is based on a relationship between the elements of at least two separate crimes. Barnett, 5 Conn.L.Rev. at 256; Comment, *The Lesser–Included Offense Doctrine in Iowa: The Gordian Knot Untied*, 59 Iowa L.Rev. 684, 684 (1974).

Courts have generally adopted any one of three approaches and, in some cases, a combination of these approaches to define a lesser-included offense. This phenomenon has caused much of the confusion surrounding the doctrine. Blair, 21 Am.Crim. L.Rev. at 447. The three approaches have been denominated the common-law or strict statutory-elements approach, the cognate approach, and the Model Penal Code approach. *Id.* at 447–51.

■ 1. *The common-law or strict statutory-elements approach.* The common-law or strict statutory-elements approach employs the following definition of a lesser-included offense: " 'To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser.' " Comment, *Jury Instructions on Lesser–Included Offenses*, 57 Nw.U.L.Rev. 62, 62 (1962). This approach simply looks to the elements of the main and lesser crimes as set out by the applicable statutes, rather than to the charge or the evidence. Ettinger, 50 Brooklyn L.Rev. at 198.

In employing this mechanical approach, a court places the applicable statutes side by side and examines their elements in the abstract. *Id.* at 198–99. The comparison must produce a nearly perfect match. If the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater. *Id.* at 199; *see also Government of the Virgin Islands v. Smith*, 558 F.2d 691, 696 (3rd Cir.) (applying strict statutory-elements approach), *cert. denied*, 434 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977); *State v. Zdiarstek*, 53 Wis.2d 776, 785–86, 193 N.W.2d 833, 838 (1972) (same).

While described as the easiest of the three approaches to apply, the strict statutory-elements approach has been criticized as inherently inflexible. Blair, 21 Am. Crim.L.Rev. at 447. For example, although

the facts of the case may establish a less serious, but merely related, offense, the less serious offense cannot be considered by the trier of fact because it fails to meet the statutory test. The elements of the offense rather than the facts of the case are the chief concern under this approach. According to one commentator, "[t]he rigid results mandated by the strict statutory interpretation theory conflict with a principal function of the lesser-included offense doctrine, which is to '[e]nable the jury to correlate more closely the criminal conviction with the act committed.'" *Id.* at 448–49.

■ 2. *The cognate approach.* In response to the rigidity of the strict statutory-elements approach, a number of jurisdictions have opted for the more liberal cognate approach. This approach is recognized as the majority view. Koenig, 1975 Det.C.L.Rev. at 43. Under the cognate approach, a defendant may be convicted of a lesser offense that, under the strict statutory-elements approach, is not necessarily committed in the course of committing the greater offense. The lesser offense is related and, hence, "cognate" in the sense that it has several elements in common with the greater offense but may have one or two elements not essential to the greater crime. Comment, 57 Nw.U.L.Rev. at 62–63.

■ In applying the cognate approach, courts have used two methods. One, the cognate-pleadings method, involves examining the facts alleged in the accusatory pleading rather than just the statutory elements of the offense. Blair, 21 Am.Crim.L.Rev. at 449; *see also United States v. Stavros,* 597 F.2d 108, 112 (7th Cir.1979) (applying the cognate-pleadings method); *State v. Brown,* 163 Conn. 52, 61–62, 301 A.2d 547, 552–53 (1972) (same); *Commonwealth v. Stots,* 227 Pa.Super. 279, 281–83, 324 A.2d 480, 481–82 (1974) (same). The other, the cognate-evidence method, focuses on the evidence supporting the charge rather than on the statutory elements or the accusatory pleading. Blair, 21 Am. Crim.L.Rev. at 449; *see also State v. Boyenger,* 95 Idaho 396, 400–01, 509 P.2d 1317, 1321–22 (1973) (applying the cognate-evidence method); *People v. Beach,* 429 Mich. 450, 464–65, 418 N.W.2d 861, 867–68 (1988) (applying the cognate-evidence method in addition to strict statutory-elements approach).

The criticism leveled at the cognate-pleadings method is that the prosecution can control the language of the accusatory pleading and thus limit lesser-included offenses. *See* Blair, 21 Am.Crim.L.Rev. at 449. In contrast to the criticism of the strict statutory-elements approach, the cognate-evidence method has been criticized as too flexible. *See* Koenig, 1975 Det.C.L. Rev. at 45. As a result of this undue flexibility, the cognate-evidence method

> may, in cases in which the possible lesser-included offenses could be numerous, put the defendant at an unfair disadvantage. He will either have to prepare to defend against all the possible lesser-included offenses, or else take the risk of only preparing to defend against the charged offense. This disadvantage, however, is not unique to the defendant. The prosecution must also in such cases be prepared for all the possible lesser-included offenses, in the event the defense seeks to have the jury charged on one or more of them.

Blair, 21 Am.Crim.L.Rev. at 450.

3. *The Model Penal Code approach.* The third approach is advocated by the Model Penal Code:

> A defendant may be convicted of an offense included in the offense charged in the indictment [or the information]. An offense is so included when:
>
> (a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or
>
> (c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a less-

er kind of culpability suffices to establish its commission.

Model Penal Code § 1.07(4) (Proposed Official Draft 1962). Subsection (c) of the rule presents a "novel and broad test for determining when a lesser offense exists." Blair, 21 Am.Crim.L.Rev. at 450.

One federal appeals court has embraced this approach as providing a "more natural, realistic and sound interpretation of the scope of 'lesser-included offense.'" *United States v. Whitaker*, 447 F.2d 314, 319 (D.C.Cir.1971). In adopting the Model Penal Code approach the court did impose a limitation

> that there must also be an "inherent" relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

*Id.* Thus, the limitation requires that the two offenses must be related in the sense that they protect the same interest. Additionally, the limitation requires that the relationship should be so close that the same evidence establishing the greater offense would necessarily show the commission of the lesser. The limitation "is intended to preclude abuse of the lesser-included offense doctrine by defense counsel seeking to appeal to the jury's sense of mercy by requesting instructions on every lesser offense arguably established by the evidence." *United States v. Johnson*, 637 F.2d 1224, 1239 (9th Cir.1980).

The Model Penal Code approach as limited by *Whitaker* has been described in subsequent cases adopting it as the "inherent relationship test." *See Johnson*, 637 F.2d at 1238; *United States v. Pino*, 606 F.2d 908, 916 (10th Cir.1979). The test has been described as "conceptually related" to the cognate-evidence approach. Mascolo, 50 Alb.L.Rev. at 274 n. 45.

After following the lead of *Whitaker* in a divided panel decision, *see United States v. Schmuck*, 776 F.2d 1368, 1371 (7th Cir.

1985), the seventh circuit court of appeals, sitting en banc, reconsidered and rejected the inherent relationship test. *See United States v. Schmuck*, 840 F.2d 384, 387 (7th Cir.), *cert. granted*, —— U.S. ——, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988); *see also United States v. Rein*, 848 F.2d 777, 783 (7th Cir.1988). It is interesting to note that the seventh circuit embraced the strict statutory-elements approach in applying the federal criminal procedure rule on lesser-included offenses, 31(c). The court's most persuasive argument against the approach adopted by *Whitaker* centered on its lack of certainty and predictability and on its potential for abuse. *Schmuck*, 840 F.2d at 389–90. One author has similarly criticized the *Whitaker* approach:

> Since [the inherent relationship] theory is even broader than the cognate theory, the flexibility objection is greater. Because the elements of the offenses need not be the same, but need only have an "inherent" relationship, the possible range of lesser-included offenses is even greater under this theory than under the cognate theory.

Blair, 21 Am.Crim.L.Rev. at 451.

Several courts see the inherent relationship test as a usurpation of the State's discretionary authority to prosecute an individual for a particular offense. *See, e.g., People v. Harman*, 125 Ill.App.3d 338, 343, 80 Ill.Dec. 663, 667–668, 465 N.E.2d 1009, 1013–14 (1984) (test rejected). Others see it as counterproductive because the test makes it "nearly impossible to formulate general governing principles." *Howard v. State*, 578 S.W.2d 83, 84 (Tenn.1979) (test rejected). The ultimate fear is that the test would result in confusion for the jury and frustration of the judicial process. *Id.* at 84–85.

B. *Determining when a trial court should instruct on a lesser-included offense.* Having decided which approach to use to define a lesser-included offense, a court is then left with the question of when to instruct on such an offense. Two basic theories underlie the approaches courts have taken to this question. One theory considers it a jury function to determine

when a lesser-included offense exists; the other considers it a court function.

■ 1. *Jury function theory.* The jury function theory operates from the premise that a not guilty plea controverts *all* elements of the offense and requires that the State prove the elements beyond a reasonable doubt. It also recognizes that the jury may reject all or any part of the State's evidence, whether controverted or not. Logically then, the possibility of finding a lesser-included offense is always present. *See* Barnett, 5 Conn.L.Rev. at 274; Comment, 57 Nw.U.L.Rev. at 66.

Stated another way, if the evidence is sufficient to convict on the greater offense then, as a matter of law, it is sufficient to convict on any lesser-included offense. *Beach*, 429 Mich. at 464, 418 N.W.2d at 867. Thus, even though the only evidence is presented by the State, a logical application of the lesser-included offense doctrine requires an instruction on the lesser-included offenses to be given always. The result is the same when only one witness testifies for the State, or when the defendant presents no evidence, testifies but denies culpability, asserts an alibi defense, or claims insanity. The net effect is that a "conviction of the lesser-included offense [is] possible regardless of the state of the evidence." Comment, 57 Nw.U.L.Rev. at 67; *see also Fike v. State*, 255 Ark. 956, 959, 504 S.W.2d 363, 365 (1974) (applying jury function theory); *Brown*, 163 Conn. at 60–61, 301 A.2d at 552 (same); *State v. Peterson*, 290 So.2d 307, 311 (La.1974) (same); *Beach*, 429 Mich. at 461–65, 418 N.W.2d at 866–68 (describing the jury function theory in conjunction with strict statutory-elements approach).

■ 2. *Court function theory.* Courts that have chosen to employ the court function theory have not disputed the logic of the jury function theory. They have, however, chosen to ignore it. Instead, they have required evidence of a lesser-included offense as a practical compromise between two considerations: the prosecution's fear that juries will reach "compromise verdicts" and the defendant's fear that a jury "will convict on insufficient evidence rather than let a defendant they believe guilty of some wrongdoing go free." Comment, 57 Nw.U.L.Rev. at 68.

Absent a fact question as to at least one of the elevating elements of the greater offense, a trial court, where the court function theory is used, may not submit a lesser-included offense instruction. The trial court evaluates the record and determines whether such a fact question is generated. Such evidence may come from either the State or the defendant. McColl, *Lesser–Included Offenses in Federal Court*, 44 Tex. B.J. 308, 309 (1981).

Proponents of the court function theory argue that it may seem the trial court is weighing the evidence as a fact-finder. But, the argument continues, the trial court's assessment of the evidence is merely for the purpose of determining whether to submit the lesser-included offense instruction, a determination that is a law question. *See State v. Williford*, 103 Wis. 2d 98, 112, 307 N.W.2d 277, 283 (1981).

■ The court function theory also differs from the jury function theory in how a defense is considered. Under the court function theory, when an alibi or insanity defense is used or the defendant presents no defense at all, a lesser-included offense instruction is precluded, provided that no evidence appears in the record to controvert the elevating element in any way. Comment, 57 Nw.U.L.Rev. at 66; *see also Johnson*, 637 F.2d at 1241; *State v. Ramos*, 108 Ariz. 36, 38, 492 P.2d 697, 699 (1972); *Marable v. State*, 154 Ga.App. 115, 116, 267 S.E.2d 837, 838 (1980).

Critics of the court function theory point out that

[e]ven though the uncontroverted evidence shows only the greater offense, the determination that this decrees only the greater offense puts the judge in the fact-finding position. The invasion of the jury province becomes clearer when the total picture is viewed—that is, if it is seen in relation to the many times when instructions on included offenses are given, even though the evidence is uncontroverted. Thus, if a judge believes a wit-

ness, or dislikes a defendant, or dislikes the crime involved, instructions on lesser offenses are not given. If the judge is sympathetic to the defendant, or tends to doubt the testimony, or [does not] believe the type of case involved should be a crime, [the judge] does give instruction[s] on lesser offenses. Or perhaps one judge always gives included offense instructions, while another never does. In this regard, the judge becomes the juror. And it is this lack of standards which is so offensive to due process, and where the function of judge and jury intermingles.

Koenig, 1975 Det.C.L.Rev. at 63–64.

## II. Constitutional Issues Raised by the Lesser–Included Offense Doctrine.

No discussion of the approaches to the lesser-included offense doctrine would be complete without an analysis of the constitutional issues raised by them. Blair, 21 Am.Crim.L.Rev. at 451. Those issues include adequate notice, double jeopardy, and the reliability of the fact-finding process. *Id.*

A. *Adequate notice.* It is axiomatic that a defendant must have adequate notice of the charges in order to defend against them. This principle is embodied in the sixth amendment to the United States Constitution, which states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . . to be informed of the nature and cause of the accusation." *See Powell v. Alabama,* 287 U.S. 45, 68, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932) (notice is an essential element of due process); *see also Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562, 572 (1975) (under fourteenth amendment, right to notice is guaranteed to defendants in state courts).

An implicit problem with the lesser-included offense doctrine is that under any of the approaches, a defendant will necessarily be defending against a charge of which the defendant has not expressly been given notice. Nevertheless, under the strict statutory-elements and cognate pleadings approaches, a defendant will usually experience no problem in determining what less-

er-included offenses are possible. In these circumstances, the accusatory pleading is usually sufficient notice of the charges against which the accused must defend. Blair, 21 Am.Crim.L.Rev. at 452; *see also Paterno v. Lyons,* 334 U.S. 314, 320–22, 68 S.Ct. 1044, 1047–48, 92 L.Ed. 1409, 1415–16 (1948) (if crimes are of the same or "overlapping" nature, due process requirements are met).

Sufficient notice will not always be so likely under the cognate-evidence and the Model Penal Code approaches. This is so because of the expanded range of possible lesser offenses under those broader approaches. *See, e.g., Schmuck,* 840 F.2d at 389 ("If the determination whether the crimes are sufficiently related is not made until all the evidence is developed at trial, the defendant may not have had notice constitutionally sufficient to support an instruction at the prosecution's request."); *see also* Blair, 21 Am.Crim.L.Rev. at 451–52; Ettinger, 50 Brooklyn L.Rev. at 208 (inherent relationship test criticized as being "potentially too broad to guarantee proper notice to the parties").

B. *Double jeopardy.* Another constitutional issue raised by the lesser-included offense doctrine involves the fifth amendment provision that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." This provision protects against both multiple prosecutions and multiple punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969).

The lesser-included offense doctrine comes into play in determining what is a "same offense" for double-jeopardy purposes. *Ex parte Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118, 122 (1889). According to *Nielsen,* if an offense is a lesser-included one of the offense charged, a conviction or acquittal of the charged offense bars a subsequent prosecution of the lesser offense. *Id.* Further, a conviction or acquittal of the lesser-included offense bars a subsequent prosecution of the greater offense.

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Supreme Court laid down the following test for determining the "same offense" for double-jeopardy purposes: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." This test parallels the strict statutory-elements approach. Ettinger, 50 Brooklyn L.Rev. at 218.

Yet one commentator has taken the position that in a subsequent case, *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court actually used a cognate-evidence approach in applying the test. *See* Blair, 21 Am.Crim. L.Rev. at 457, 459. *But see* Ettinger, 50 Brooklyn L.Rev. at 219 n. 159 (taking the position that *Brown* observed the strict statutory-elements approach); *Johnson*, 637 F.2d at 1240. The implication of this view, of course, is that states may be bound to use the cognate-evidence approach for double-jeopardy purposes, even though they may otherwise employ a strict statutory-elements approach. *Cf. Benton v. Maryland*, 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717 (1969) (fifth amendment guarantee against double jeopardy applies to the states).

C. *Reliability of the fact-finding process.* We have discussed the constitutional issues of adequate notice and double jeopardy that arise when a lesser-included offense instruction is given. A possible due process issue comes into play when such an instruction is not given, though it is warranted by the evidence. A defendant may persuasively argue that under such circumstances, even though reasonable doubt exists as to the greater offense charged, the jury might convict because the evidence shows the defendant was guilty of some offense. Failure to give the instruction could thus call into question the reliability of the fact-finding process and might raise a serious constitutional question. *See Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844, 850 (1973) (defendant is entitled to a lesser-included offense instruction when withholding the instruction raises a substantial risk of an erroneous decision in the fact-finding process; court stopped short of elevating this right to constitutional level); Blair, 21 Am.Crim.L.Rev. at 462–63.

Using precisely the same reasoning, the Supreme Court has held that in a capital case, a failure to give a lesser-included noncapital offense instruction warranted by the evidence violates due process under the fourteenth amendment. *Beck v. Alabama*, 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392, 402–03 (1980) (invalidating statute prohibiting trial court from instructing on lesser-included offenses in capital cases regardless of evidence justifying conviction of such an offense).

The Court stopped short of deciding whether due process requires such instructions to be given in a noncapital case, expressly stating in a footnote that it was not deciding the issue. *Id.* at 638 n. 14, 100 S.Ct. at 2390, 65 L.Ed.2d at 403. If the *Beck* rule is applicable to noncapital cases, as one commentator believes, then serious questions arise as to which approach to lesser-included offenses satisfies the *Beck* rule. *See* Blair, 21 Am.Crim.L.Rev. at 464–72. It has been suggested that the Model Penal Code approach and the cognate-evidence approach are the only ones that can safely meet the potential constitutional issue raised in *Beck*. *See* Blair, 21 Am.Crim. L.Rev. at 466–68, 468 n. 155; *see also Johnson*, 637 F.2d at 1234–39; *People v. Geiger*, 35 Cal.3d 510, 518–20, 674 P.2d 1303, 1306–08, 199 Cal.Rptr. 45, 48–50 (1984). In any event, a question arises about whether a state can constitutionally use its own approach to lesser-included offenses if that approach results in no lesser offense instruction being given when the evidence suggests such an offense was committed.

III. *Modification of Iowa's Approach to the Lesser–Included Offense Doctrine.*

Iowa's present approach to the lesser-included offense doctrine involves a two-part test:

The legal or element test requires the lesser offense to be composed solely of some but not all of the elements of the greater offenses. Thus the lesser offense is necessarily included in the greater offense if the greater offense cannot be committed without also committing the lesser. Conversely, if the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater.

The factual test requires the court to determine whether there is a sufficient factual basis in the record for submitting the included offense.

*State v. Lampman,* 345 N.W.2d 142, 143 (Iowa 1984) (citations omitted).

We devised the following formula to determine whether the factual test is met:

In the included offense setting the courts apply a principle that when the major offense consists of elements A, B, and C, the lesser offense consists of elements B and C, *and the record does not contain substantial evidence from some quarter controverting element A,* the State's case stands or falls on the major offense.

*State v. Morgan,* 322 N.W.2d 68, 69–70 (Iowa 1982). In short, unless there is evidence in the record controverting element A, the dissimilar element, the lesser-included offense instruction should not be given. As this formula shows, Iowa employs the common-law or strict statutory-elements approach to define a lesser-included offense, and the court function theory to determine when a lesser-included offense instruction should be given.

The strict statutory-elements approach is embodied in Iowa Rule of Criminal Procedure 21(3) and in Iowa Code section 701.9 (1985).

Rule 21(3) provides:

Upon trial of an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense when such attempt is prohibited by law. In all cases, the defendant may be found guilty of any offense *the commission of which is necessarily included in that with which the defendant is charged.*

(Emphasis added.)

Section 701.9, entitled "Merger of lesser included offenses," provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such a verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

The "necessarily included" language of the rule and statute has traditionally been limited to the strict statutory-elements approach, as opposed to the cognate and Model Penal Code approaches. Ettinger, 50 Brooklyn L.Rev. at 195–96. It has been suggested that the "necessarily included" language implies a theoretical requirement to restrict included offenses that might fall within a rule or statute regarding included offenses. *See id.* at 201. Iowa Rule of Criminal Procedure 6(3), which compliments rule 21(3), requires the trial court to instruct the jury "not only as to the public offense charged but as to all lesser offenses of which the accused might be found guilty under the indictment and upon the evidence adduced, even though such instructions have not been requested."

Considering the strengths and weaknesses of the various approaches used to define lesser-included offenses, we think we should retain our present strict statutory-elements approach. We think, however, that in determining *when* a lesser-included offense instruction should be given, the jury function theory better serves our purpose, and we adopt it. Such an approach simply requires applying the legal test and recognizes that the factual test is automatically met. *See, e.g., People v. Beach,* 429 Mich. 450, 418 N.W.2d 861 (1988).

Michigan recognizes two classes of lesser-included offenses: those under the strict statutory-elements approach and those under the cognate approach. *Id.* at 464–65, 418 N.W.2d at 868. Under the Michigan

strict statutory-elements approach, instructions are automatically given for necessarily-included offenses. The trial court does not review the record to determine whether there is evidence to support a verdict for the lesser offense. *Id.* Such a review is necessary only when the defense requests an instruction on a cognate lesser-included offense. *Id.*

■ Like the Michigan court and others that apply the jury function theory, we hold that Iowa trial courts shall no longer be required to review the record to determine whether there is sufficient evidence to support a verdict for a lesser-included offense. Except in two instances, they shall automatically instruct on a lesser-included offense if the legal test is met as to a greater offense that has support in the evidence.

One exception to the automatic instruction rule is when the defendant stipulates to the dissimilar element of the greater offense. Logically, in these rare cases, the evidence is conclusive that no lesser-included offense was committed.

The other exception involves lesser-included offenses that do not meet our legal test but are made lesser-included offenses by statute. These lesser-included offenses are examples of the cognate-evidence approach. They have several elements in common with the greater offense but may have one or two elements not essential to the greater crime. Necessarily, in these instances, the trial courts must apply the factual test to determine if sufficient evidence exists to submit these statutorily mandated lesser-included offenses.

Our review of the Iowa criminal statutes suggests that the following crimes are made lesser-included offenses by law. Voluntary manslaughter is made an included offense for murder in the first or second degree. *See* Iowa Code § 707.4. Involuntary manslaughter is made an included offense for first- or second-degree murder and for voluntary manslaughter. *See id.* at § 707.5. Operating a vehicle without the owner's consent is made a lesser-included offense of theft. *See id.* § 714.7. We note that in each instance, the greater offense can be committed without committing the lesser offense. Thus, each of these lesser offenses is actually a cognate, rather than a necessarily included, offense.

■ Under our modified approach we still retain the rule that to preserve error, a defendant must request a lesser-included offense instruction or object to the court's failure to give it. *See State v. Burkett,* 357 N.W.2d 632, 634–35 (Iowa 1984); *see also* Iowa R.Crim.P. 18(5)(f) (incorporating by reference the requirements of Iowa Rule of Civil Procedure 196, which states that only objections to jury instructions that are made to the trial court shall be considered on appeal). We also retain the rule that a defendant may expressly waive a lesser-included offense instruction. *See Burkett,* 357 N.W.2d at 635; *State v. Veverka,* 271 N.W.2d 744, 749 (Iowa 1978).

A number of reasons favor our modified approach to the lesser-included offense doctrine.

First, our strict statutory-elements approach is consistent with the "necessarily included" language of Iowa Rule of Criminal Procedure 21(3) and Iowa Code section 701.9. The cognate and Model Penal Code approaches would in effect rule out the "necessarily included" language of the rule and statute. In its place, these two approaches would substitute language such as "factually related to and serves the same policy goals as" the charged offense. *Cf. Schmuck,* 840 F.2d at 389 (utilizing similar reasoning in connection with Federal Rule of Criminal Procedure 31(c) on lesser-included offenses as a ground for rejecting inherent relationship test).

Second, the strict statutory-elements approach besides being

> truest to the legislative scheme ... offers the most clarity to both practitioners and judges. Thus, perhaps the most compelling reason for adopting the strict standard is the clarity and ease with which it can be applied. Absent a statutory modification, a single determination suffices to categorize the relationship between any two criminal offenses for all subsequent cases. Each party to later

criminal proceedings is then on notice regarding the availability of the lesser-included offense doctrine and should therefore be better prepared to present an argument specific to the issues known to be in question. Every formal accusation of a particular crime thus carries with it the same potential for mitigation. This provides an evenhandedness impossible under the other [approaches] and encourages the parties to use the evidence to prove or disprove the case at hand, instead of inviting them to manipulate the proof to accommodate as wide a range of conclusions as possible.

Ettinger, 50 Brooklyn L.Rev. at 201; *see also Schmuck*, 840 F.2d at 389.

Third, our modified approach to the question of when a lesser-included offense instruction should be given is more logical than our former factual test. This improvement is apparent from our discussion on the jury function theory vis-a-vis the court function theory. More importantly, our modified approach places the factual determination of a lesser-included offense in the hands of the jury, where it belongs. Trial courts should not be in the business of reviewing the record and weighing the evidence to determine when a lesser-included offense instruction should be given.

Moreover, when employing the factual test under the court function theory, we did not strictly apply the principle that a not guilty plea controverts all the elements of the charged offense. *State v. Morgan*, 322 N.W.2d 68, 69 (Iowa 1982). As we said earlier, courts applying the jury function theory do *strictly* apply the principle. This accounts for the main difference between the theories. Thus, our factual test has no doubt caused considerable problems for trial courts in those cases where a defendant has not testified, has denied culpability, or has asserted inconsistent defenses.

For example, in *Morgan*, 322 N.W.2d at 69–71, the defendant asserted an alibi defense, and we found the evidence insufficient to controvert the additional element in the greater offense. Later, in *State v. Mount*, 422 N.W.2d 497, 499–501 (Iowa 1988), we held there was sufficient evidence in the record to controvert the elevating element, even though the defendant there also asserted an alibi defense.

The trial court's observation in *Mount* underscores the problem the courts have in applying the factual test:

Defense doesn't attack the allegations [of first-degree robbery and first-degree burglary] except to say [he] was not the person [who] did it. So it's ... an all or nothing proposition here.... The same goes for ... burglary in the second degree. Again, as this case has shaped up, the defendant either did what the State said or didn't do what the State said.

*Mount*, 422 N.W.2d at 500. We tried to convey a message to trial courts that in close cases, a lesser-included offense instruction should be given. *See id.* at 501 ("In other words, the duty to instruct on lesser-included offenses is not the exception, but the rule."). The approach we adopt today eliminates the troublesome problem posed by the manner in which we applied our previous factual test to lesser-included offenses.

Fourth, the strict statutory-elements approach better comports with the constitutional requirement for adequate notice of charges than the cognate-evidence and Model Penal Code approaches do. Blair, 21 Am.Crim.L.Rev. at 452. Under our approach, the charge against the defendant necessarily implies whether and which lesser-included offenses come into play. *See* Iowa R.Crim.P. 6(1) ("Where a public offense carries with it certain lesser-included offenses, the latter should not be charged, and it is sufficient to charge that the accused committed the major offense."). With the cognate-evidence and Model Penal Code approaches, the defendant must await the evidence before knowing what, if any, lesser-included offenses are implicated.

Fifth, considering the double-jeopardy issue, one federal appeals court has pointed out that "at least arguabl[y] ... the requisite identity of elements is to be determined solely from comparison of the two statutes, and ... the indictment does not narrow the type of elements to be examined." *Schmuck*, 840 F.2d at 390. The

court noted that *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228, 235 (1980), decided after *Brown* and *Blockburger*, focuses " 'on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial.' " *Schmuck*, 840 F.2d at 390.

Simply put, *Schmuck* takes issue with any notion that *Brown* and *Blockburger* require a cognate-evidence or Model Penal Code approach to double-jeopardy claims. Although *Schmuck* does not decide the issue, nor do we, we agree with the implication from *Schmuck* that the approach to lesser-included offenses we adopt today may pass constitutional muster in a double-jeopardy context. *See State v. Stewart*, 223 N.W.2d 250, 251 (Iowa 1974), *cert. denied*, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975) (applying strict statutory-elements approach to double-jeopardy claim). If we are wrong in this respect, we can simply use whatever approach is required in a double-jeopardy context, without abandoning our own approach in all other contexts. As a practical matter, the number of such cases will probably never be large enough to justify abandoning our approach.

Finally, the due process concerns raised by *Beck v. Alabama* may seldom arise, given the nature of our new approach. As we noted above, *Beck* leaves open the question of whether, in a noncapital case, a failure to give a lesser-included offense instruction warranted by the evidence violates due process. Iowa Rule of Criminal Procedure 21(3), pertaining to attempted offenses and offenses consisting of different degrees, dictates that a number of lesser-included offenses are available by statute. Iowa Code sections 707.4, 707.5, and 714.7 perform the same function. As we noted earlier, section 707.4 makes voluntary manslaughter an included offense under an indictment for murder in the first or second degree. Similarly, section 707.5 makes involuntary manslaughter an included offense under an indictment for voluntary manslaughter or murder in the first or second degree. Section 714.7 makes operating a motor vehicle without the owner's consent a lesser-included offense of theft.

Our point here is that the legislature has already mandated by statute a large number of lesser-included offenses.

The approach we adopt today increases the potential for instructing on lesser-included offenses. Thus, with this approach, we are utilizing existing law to meet the possibility that the Supreme Court may extend the *Beck* rule to noncapital cases. In any event, we do not think the concerns raised by *Beck* should deter us from adopting our modified approach.

IV. *Application of the Modified Approach.*

Against this backdrop we turn to the record in this case. Jeffries was charged with one count of insurrection, seven counts of second-degree kidnapping, two counts of assault while participating in a felony, one count of going armed with intent, and three counts of assault with intent to inflict a serious injury. *See* Iowa Code §§ 718.1; 710.1, 710.3; 708.3; 708.8; 708.1; 708.2(1). At trial Jeffries requested that the district court submit jury instructions on willful disturbance and harassment of public officers and employees as lesser-included offenses of insurrection. *See* Iowa Code §§ 718.3, 718.4. The district court refused to do so. Jeffries was then found guilty of insurrection, second-degree kidnapping, and assault while participating in a felony.

The court of appeals, applying the legal and factual tests, determined that willful disturbance and harassment of public officers and employees were lesser-included offenses of insurrection.

On further review, the State argues that willful disturbance fails the legal as well as the factual test. While assuming, for purposes of argument, that the harassment offense meets the legal test, the State maintains that it fails the factual test.

Under our newly adopted approach to lesser-included offenses, we first determine whether willful disturbance and harassment meet the legal test. If so, we next determine whether the defendant stipulated to an elevating element of insurrec-

tion, the offense charged. In this instance we need only concern ourselves with whether the legal test is met because there was no stipulation by the defendant. Thus, under our modified approach, if we determine that willful disturbance and harassment meet the legal test, the factual test is met as a matter of law.

The elements of insurrection are:

1. Three or more persons
2. Acting in concert
3. Using physical violence against persons or property
4(a) With the purpose of interfering with, disrupting, or destroying the government of the state or any subdivision thereof, or
4(b) With the purpose of preventing any executive, legislative, or judicial officer or body from performing its lawful function.

Iowa Code § 718.1. Because the State charged both alternatives 4(a) and 4(b), we consider both in applying the legal test. *See State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980) ("When the statute defines an offense alternatively, the relevant definition is the one for the offense involved in the particular prosecution.").

The elements of willful disturbance are:

1. Any person
2. Who willfully disturbs
3. Any deliberative body or agency of the state or subdivision thereof,
4(a) With the purpose of disrupting the functioning of such body or agency by tumultuous behavior, or
4(b) With the purpose of coercing by force any official conduct or proceeding.

Iowa Code § 718.3.

As we noted earlier, under the legal test the lesser offense is necessarily included in the greater offense if it is impossible to commit the greater offense without also committing the lesser offense. *State v. Redmon*, 244 N.W.2d 792, 801 (Iowa 1976). If the lesser offense contains an element not required for the greater offense, the lesser cannot be included in the greater. This is because it would be possible in that

situation to commit the greater without also having committed the lesser. *Sangster*, 299 N.W.2d at 663. In using this test, we look to the statutory elements rather than to the charge or the evidence. *Redmon*, 244 N.W.2d at 801.

Here, willful disturbance requires an *actual disturbance* of a deliberative state body, whereas insurrection, the offense charged, requires only physical violence against persons or property with the *purpose of disrupting* such a body. Thus, the legal test is not met because insurrection can be committed without committing willful disturbance.

For example, assume that A intends to disrupt a state agency hearing by shooting the participants. Before A can get to the hearing room he is accosted by several security guards who know of his plan. The security guards prevent A's disruption of the hearing, but not before A inflicts serious injuries on one of the guards. The hearing concludes before the participants discover what has transpired. Thus, violence against a person occurred without any disturbance of the hearing.

We reach an opposite result in applying the legal test to insurrection and harassment. The elements of harassment are:

1. Any person
2. Who willfully prevents or attempts to prevent
3. Any public officer or employee
4. From performing the officer's or employee's duty.

Iowa Code § 718.4. With the exception of the alternative "who willfully prevents," in element two, all four of the elements are common to the two offenses.

■■■ Because we are dealing with a lesser offense involving alternatives, an additional rule under the legal test comes into play. If the lesser offense is defined alternatively, the offense is included if any of the alternatives are included. *Sangster*, 299 N.W.2d at 664. Because an offense is necessarily included in another if it is a component part of the greater, an offense is necessarily included if one of its statutory definitions makes it a component part

of a greater offense. *Id.* When so included, the greater offense cannot be committed without also committing the lesser offense. *Id.*

 Applying this rule to the alternative "who willfully ... *attempts* to prevent," we conclude the legal test is met. This alternative is the same as alternative 4(b), "with the purpose of preventing," of insurrection, the greater offense. The State did not restrict itself to the "who willfully *prevents*" alternative of harassment. Thus, considering the "who willfully ... attempts" alternative of harassment, it is not possible to commit insurrection without also committing harassment. Under these circumstances, Jeffries was entitled to a lesser-included offense instruction on harassment.

We conclude the district court correctly refused Jeffries' request for a lesser-included offense instruction on willful disturbance but erred in denying a similar request as to harassment.

## V. *Disposition.*

In summary, we modify our approach to the lesser-included offense doctrine. We retain the legal test. When that test is met, trial courts, with two exceptions, shall automatically instruct on a lesser-included offense. The first exception occurs when the defendant stipulates to the dissimilar elements in the greater offense. The second exception occurs when a statute makes an offense, which is not necessarily included, a lesser-included offense.

We modify our approach because, on balance, we think the factual test as previously applied is contrary to logic and invades the province of the jury by allowing trial courts to weigh the evidence on lesser-included offenses. In addition, we think our strict statutory-elements approach as modified is faithful to the "necessarily included" language of Iowa Rule of Criminal Procedure 21(3) and Iowa Code section 701.9; it is the cleanest, easiest, and fairest of the various approaches to apply; and it has the potential to meet the constitutional issues raised by the doctrine of lesser-included offenses.

In applying our modified approach to the record in this case, we conclude the district court correctly refused Jeffries' request for a lesser-included offense instruction on willful disturbance but erred in refusing a similar instruction on harassment. Accordingly, we vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand the case for a new trial on the insurrection charge only.

COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART; REMANDED WITH DIRECTIONS.

All Justices concur except HARRIS, J., who dissents.