**STATE of Iowa, Appellee,**

v.

**Mark MULVANY, Jr., Appellant.**

**No. 98–963.**

Supreme Court of Iowa.

Sept. 9, 1999.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, William E. Davis, County Attorney, and Kelly G. Raines and Julie Walton, Assistant County Attorneys, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

The defendant, Mark Mulvany, Jr., appeals from the district court's judgment of conviction and sentence following his guilty plea to the charges of harassment in the first degree, harassment in the third degree, and stalking. *See* Iowa Code §§ 708.7(1), 708.7(2), 708.7(4), 708.11(2), 708.11(3)(c) (1997). Specifically, he contends harassment is a lesser included offense of stalking. For that reason, he argues that the district court erred when, pursuant to Iowa Code section 701.9, it failed to merge one of the harassment convictions with the stalking conviction. We conclude harassment is not a lesser included offense of stalking and therefore affirm.

I. On July 29, 1997, Melody Skalla received twenty-four phone calls within four hours, most of which were hang-up calls. A police officer was present at Skalla's home during seven of those calls. During one call, Mulvany asked if Skalla wanted to "come out and play" and in another call threatened he was "going to kill her." Mulvany also described for Skalla the clothing she wore and the video she rented the day before and also where she sat while watching the video at a male friend's residence.

On July 30 Skalla was at work when Mulvany called her and told her what she was wearing that day and what time she took her break. Additionally, on the same day, Skalla received four hang-up calls at her home. On the fifth call, Mulvany told Skalla she had better be home by ten that night or "he was going to do something bad." Skalla appeared to shake off what Mulvany had said, and he replied, "you'll be laughing when I'm stabbing you to death." When the police arrived at Skalla's residence, she tried to get Mulvany to repeat the threat. Mulvany then said, "you heard what I said" and "[i]f you'd be a little nicer I wouldn't say things like that to you." Mulvany would not speak when an officer would answer the phone and identify himself.

On July 31 Mulvany called Skalla and offered her money to pay for a window he had apparently broken. Skalla hung up. Mulvany called back and told her to quit playing games because she was a "dead . . . b_____ tonight." Mulvany called back again and said he would see her in a few minutes. Skalla asked him not to call again, and Mulvany answered, "I won't be, but I'll be seeing you."

On August 3 Skalla called the police and asked that they patrol her area. She told the police that Mulvany had assaulted her in Illinois that day. Mulvany called and told her he was on his way to her mother's home where Skalla had been staying. A telephone tracer had identified some of Mulvany's calls were made from Becky Reye's phone, Mulvany's girlfriend and mother of Mulvany's two children.

On August 8 Mulvany called Skalla's mother's home and talked to Skalla's brother. Mulvany asked the boy if he "smelled smoke" and if "something was burning." The boy interpreted these words as a threat to burn the home down.

On August 11 Mulvany called Skalla and told her, "I'm going to have to kill you. I'm going to kill you tonight." Mulvany described how he would stab her. He also correctly identified what she was wearing and doing the last two days.

The State charged Mulvany with five counts of first-degree harassment, one count of third-degree harassment, and one count of stalking. The charges were based on Mulvany's calls and conduct between July 29, 1997, and August 11, 1997. In a plea agreement reached with the State, Mulvany pleaded guilty to these charges. In return for the plea, the State agreed to (1) dismiss another pending charge of stalking, and (2) recommend a period of incarceration of no longer than five years.

The district court sentenced Mulvany to fines of $500 and concurrent terms of incarceration, not to exceed two years on three of the first-degree harassment charges (Counts I, II, and III), and a $50 fine on the charge of third-degree harassment (Count IV). Additionally, the court imposed fines of $500 and terms of incarceration not to exceed two years on the remaining two charges of first-degree harassment (Counts V and VI) and the one charge of stalking (Count VII) to be served concurrently, but consecutively to the sentences on Counts I through III. Mulvany appeals only from Count VI, harassment in the first degree, and Count VII, stalking.

On appeal Mulvany contends harassment in the first degree is a lesser included offense of stalking. Therefore, he argues, the district court should have merged his sentences for these crimes. Mulvany claims the court's failure to do so violates the Double Jeopardy Clause of the Fifth Amendment to the Federal Constitution and Iowa Code section 701.9.

■■■ II. We agree with the State that Mulvany has failed to preserve error on his double jeopardy challenge because he did not raise the issue in· the district court. As the State points out, we require error preservation even on constitutional issues. *See State v. Halliburton,* 539 N.W.2d 339, 343 (Iowa 1995). The State notes, however, and correctly so, that the error preservation rule does not apply to a defendant's statutory claim of an illegal sentence under Iowa Code section 701.9. *See id.*

■■ III. Because Mulvany alleges a violation of Iowa Code section 701.9, our review is for correction of errors at law. *See State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994).

**IV.** Iowa Code section 701.9 requires the sentencing court to merge lesser included offenses:

No person shall be convicted of a public offense which is necessarily included in

another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment ·of guilty of the greater of the offenses only.

Iowa Code § 701.9; *see also* Iowa R.Crim. P. 6(2) (providing that, "[u]pon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both").

■■■ We apply the legal-elements test to determine lesser included offenses. *See State v. Jeffries,* 430 N.W.2d 728, 736 (Iowa 1988). Under this test, we place the applicable statutes

side by side and examine their elements in the abstract. The comparison must produce a nearly perfect match. If the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater.

*Id.* at 730 (citations omitted). Stated another way, "the lesser offense is necessarily included in the greater offense if the greater offense cannot be committed without also committing the lesser." *Id.* at 736 (citation omitted).

The elements of stalking, the greater offense, are:

1. ... [T]he defendant purposefully engaged in a course of conduct directed at [the victim] that would cause a reasonable person to fear bodily injury to, or the death of [the victim].

2. The defendant knew or should have known that [the victim] would be placed in reasonable fear of bodily injury or death to [the victim] or a member of [the victim's] immediate family.

3. The defendant's course of conduct induced fear in [the victim] of bodily injury or death to [the victim] or a member of [the victim's] immediate family.

I Iowa Crim. Jury Instructions 820.1; *accord* Iowa Code § 708.11(2).

The elements of first-degree harassment, the lesser offense, are:

1. ... [T]he defendant communicated with [the victim] [by telephone], ... without a legitimate purpose, in a manner likely to cause [the victim] annoyance or harm.

2. The defendant communicated a threat to commit [a forcible felony].

3. The defendant did so with the specific intent to intimidate, annoy or alarm [the victim].

I Iowa Crim. Jury Instructions 810.1; *accord* Iowa Code §§ 708.7(1)(a); 708.7(2).

■ As the State contends, the crime of first-degree harassment contains elements that are not part of the stalking offense. Those elements include the threat to commit a forcible felony and a specific intent to intimidate, annoy or alarm. Therefore, it is possible to commit stalking—the greater offense—without also committing first-degree harassment—the lesser offense. For example, a person could threaten another with a simple assault (conduct included in element 1 of stalking), which is not a forcible felony (conduct required by element 2 of harassment). And a person could engage in a course of conduct that would cause a reasonable person to fear bodily injury or death (conduct included in element 1 of stalking) without ever communicating to the victim a direct threat with the specific intent to intimidate, annoy or alarm (conduct required by element 3 of harassment).

Contrary to Mulvany's contention, we therefore conclude that merger of the two convictions was not appropriate under section 701.9 because first-degree harassment is not a lesser included offense of stalking. For this reason, the district court did not commit error when it did not merge the two offenses.

Finding no error, we affirm.

**AFFIRMED.**