**STATE of Iowa, Appellee,**

v.

**Kevin BOLEY, Appellant.**

**No. 88–1067.**

Supreme Court of Iowa.

May 23, 1990.

Raymond E. Rogers, State Appellate Defender, and Shari Baron, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats and Thomas H. Miller, Asst. Attys. Gen., and William H. Appel, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and LAVORATO, JJ.

SCHULTZ, Justice.

This appeal arises from defendant Kevin Lee Boley's conviction of first-degree murder and first-degree robbery following a jury trial. The charges stem from the shooting death of Marilyn Brisendine while she was working the night shift at the Amoco gas station in Agency, Iowa.

In the early morning hours of October 30, 1987, defendant and Lance Newland were seen loitering at the station. Their behavior made decedent and her coworker suspicious and nervous enough to write down the license number and description of the car that the two men were driving in case the police needed to be notified. Decedent also locked the normally unlocked cash register and hid the key. At about 3:45 a.m. a skinny, light-haired individual fitting defendant's description was seen quickly leaving the station and jumping into the car previously described by the victim. The observer, a customer, then found Ms. Brisendine "[lying] face down in [a] pool of blood" behind the counter. Despite the fact that she had been shot in the lower back and under the eye, she was able to tell the customer that "I wrote the license plate number down." Ms. Brisendine later died of the injuries inflicted by the 22–caliber bullet to her back.

Law enforcement officials found the note "Silver Dodge Aries, SJE–224" written on a pad on the counter in the station and traced the car to defendant's grandmother's apartment complex in Ottumwa. Defendant and Lance Newland were arrested there at approximately seven o'clock that morning.

The defendant had been living with his grandmother Lena Boley at another location for approximately three months until October 13. Defendant then moved in temporarily with a friend. After about a week, he and his friend quarrelled, and defendant moved out. He left a duffel bag and an unzippered suitcase at his friend's home. The defendant spent part of the night of October 29 at his grandmother's new apartment.

Officials obtained a warrant to search defendant's grandmother's home on October 30. The investigation team returned to the apartment later that day when they

were notified that defendant's friend had dropped off his duffel bag and suitcase. The suitcase was closed but not zipped when defendant left it at his friend's house. It was zipped shut when it was brought to his grandmother's residence. She told the agents that they were welcome to search the luggage. The agents did not consider this search to be a continuation of the execution of the earlier search warrant. A barrel to a 22-caliber handgun was found in the suitcase and was later identified as the spare barrel for a missing Beretta handgun belonging to the father of Newland's former girlfriend.

Defendant and Newland were both charged with the crimes of murder and robbery in the first degree pursuant to Iowa Code sections 707.1, 707.2 and 711.1, 711.2 (1987). The court granted defendant's motions for change of venue and to sever the trials. Defendant's motions to suppress statements made to a jail informant, certain identification testimony and the warrantless search of his luggage were overruled. The case was then tried to a jury in Jefferson County in June 1988. Defendant was found guilty on both counts. The court of appeals affirmed the trial court as a matter of law. On further review, defendant claims that the trial court erred in (1) admitting into evidence the gun barrel which was seized in the warrantless search, (2) instructing the jury that it was immaterial to the offense of robbery whether property was actually stolen, (3) submitting the robbery count to the jury, and (4) refusing to submit involuntary manslaughter as a lesser-included offense. We affirm the trial court.

I. *Warrantless search.* Defendant claims that the warrantless search of his suitcase violated his right to be free from unreasonable searches and seizures under both the United States and Iowa Constitutions. *See* U.S. Const. amend. IV and Iowa Const. art. I, § 8. When state and federal constitutional sections encompass the same protections, we usually consider them identical in scope and purpose. *State v. A-1 Disposal,* 415 N.W.2d 595, 598 (Iowa 1987). We do so here. In assessing alleged violations of constitutional rights, we make an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Campbell,* 326 N.W.2d 350, 352 (Iowa 1982).

■ A. *Expectation of privacy.* The fourth amendment protects an individual's legitimate expectation of privacy from government intrusion. *State v. Flynn,* 360 N.W.2d 762, 764 (Iowa 1985). We must therefore determine whether the defendant had a constitutionally protected reasonable expectation of privacy in the contents of his unzipped luggage left at his friend's apartment. The trial court in its ruling on the motion to suppress concluded that he did not have such an expectation of privacy. We agree.

The Supreme Court has stated that "luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Arkansas v. Sanders,* 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235, 244 (1979) (unlocked suitcase); *see also United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538, 548–49 (1977) (double-locked footlocker); *United States v. Barry,* 853 F.2d 1479, 1481–82 (8th Cir.1988) (locked suitcase); *United States v. Presler,* 610 F.2d 1206, 1213 (4th Cir.1979) (locked briefcases); *United States v. Stevie,* 582 F.2d 1175, 1179 (8th Cir.1978) (closed suitcase), *cert. denied,* 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979); *United States v. Schleis,* 582 F.2d 1166, 1172 (8th Cir. 1978) (locked briefcase). The issue is whether defendant had a legitimate expectation of privacy when he left the unzipped suitcase at his friend's apartment.

The Eighth Circuit Court of Appeals in *Barry* quoted *Presler,* 610 F.2d at 1213–14, to support its conclusion that by locking his suitcase before checking it and keeping the key, the defendant demonstrated that he had a "legitimate expectation of privacy" in the luggage. *Barry,* 853 F.2d at 1482. In contrast, in *State v. Schrier,* 283 N.W.2d 338, 346 (Iowa 1979), we noted that defendant's knapsack's strap was not tightly latched so that its contents "became visible by simply pushing the flap aside." We

held that the defendant's fourth amendment rights were not violated when the officer simply pushed that flap aside and looked into the bag's main compartment. *Id.* Similarly, in *United States v. Ramapuram,* 632 F.2d 1149, 1156 (4th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), the court noted that the defendant had "failed to secure" the trunk of his car and upheld the warrantless search conducted by government agents.

As in *Ramapuram* and *Schrier,* defendant could have secured his personal belongings; he could have simply closed his suitcase by using the zipper. In *Schrier* we contrasted the knapsack with a footlocker, briefcase or suitcase "which securely conceals articles from view *unless unlatched.*" 283 N.W.2d at 346 (emphasis added). Defendant's suitcase was not secured, and he did not take any precautions to protect its contents. He left it unzipped and unattended at his friend's home following a quarrel, returning only once in five days to change clothes. He allowed the friend to help him put his belongings back in the suitcase after he had removed them. When his friend brought defendant's luggage to his grandmother's apartment, it was necessary to close the suitcase by zipping it to prevent the contents from spilling out during the move.

■ In *Presler* the defendant had given his locked briefcases to a friend for safekeeping. The court cited his failure to give that friend the keys or the combination to the locks as clear evidence that defendant had no intention of giving the friend or anyone else access to the briefcases. 610 F.2d at 1214. The owner had taken physical precautions to protect his property from intrusions by third persons. No such care was taken here. On the contrary, defendant allowed his friend access to the contents of the suitcase. Whenever one knowingly exposes his effects to third parties, he surrenders his fourth amendment protections in such property. *U.S. v. Sellers,* 667 F.2d 1123, 1126 (4th Cir.1981).

Furthermore, during defendant's five-day absence, his former girlfriend visited his friend's home and looked through defendant's suitcase for any of her belongings that he might have taken from her when they separated. The girlfriend did not ask the friend's permission to search the luggage, and the friend did not stop her. She removed some stuffed animals and cassette tapes which she said belonged to her.

Taking all these facts into consideration, we conclude that the trial court was correct in its determination that defendant did not have a reasonable expectation of privacy in the contents of his luggage. It was not a violation of the fourth amendment to admit the seized spare gun barrel into evidence.

■ B. *Harmless error.* Even if the court had erred in admitting the gun barrel, we need not reverse defendant's conviction because such error would be harmless. Prejudice must be shown before any error requires reversal. *State v. Cole,* 295 N.W.2d 29, 40 (Iowa 1980). An error of constitutional magnitude does not mandate a new trial if the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *State v. Freeman,* 297 N.W.2d 363, 367 (Iowa 1980); *Cole,* 295 N.W.2d at 40; *State v. Porter,* 283 N.W.2d 351, 353 (Iowa 1979). The State has the burden of proving harmlessness beyond a reasonable doubt. *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710; *Cole,* 295 N.W.2d at 40. Harmless error analysis is applicable to the erroneous admission of illegally seized evidence. *Chambers v. Maroney,* 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419, 429 (1970).

We conclude the State has established beyond a reasonable doubt that any error in the admission of the gun barrel was harmless. Although we do not discuss all the evidence, we have carefully reviewed the record and have determined that the admission of the gun barrel could not have influenced the verdict.

■ II. *Jury instruction.* Defendant claims that jury instruction 25 is an inaccurate and confusing statement of the law which led jurors to ignore the lack of evi-

dence of theft when considering whether defendant intended to commit a theft. Defendant preserved error on this issue by objecting to the submission of this instruction.

■ Instruction 25 reads simply "It is immaterial to the offense of Robbery whether the property was actually stolen." This instruction is an accurate statement of the law which is taken directly from the last unnumbered paragraph of Iowa Code section 711.1. *See also State v. Rich*, 305 N.W.2d 739, 746 (Iowa 1981) (actual commission of a theft not an element of the offense of robbery). Unlike the cases cited by defendant where the instructions unduly emphasized certain evidence, instruction 25 simply clarifies the definition of robbery in the Code and in the other instructions.

■ We read the instructions as a whole to determine if there has been reversible error. *State v. Oliver*, 341 N.W.2d 744, 747 (Iowa 1983); *State v. Lindsey*, 302 N.W.2d 98, 102–03 (Iowa 1981). An error in jury instructions must be prejudicial to warrant reversal. *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983).

When we examine all of the instructions, we conclude that the jury was not misled. Instruction 22, which defines the offense of first-degree robbery, specifically states that "a person commits robbery, when, having the intent to commit a theft, he threatens to commit immediately any forcible felony." Instruction 26 reiterates the necessity of finding the intent to commit a theft when defining second-degree robbery. Therefore instruction 25, when read in connection with instructions 22 and 26, succinctly and correctly states the law that a conviction of robbery requires proof of the intent to commit a theft as one of its elements. The trial court did not commit reversible error.

III. *Sufficiency of the evidence.* Defendant claims that the evidence of robbery was insufficient to generate a jury question on either felony murder based on robbery or on robbery itself. Because it is unknown whether the jury relied upon the theory of premeditation or felony murder to convict the defendant of first-degree murder, he asserts that the convictions for murder as well as robbery should be dismissed.

■ A conviction of robbery requires proof of the intent to commit a theft and not proof of the actual theft. *See Rich*, 305 N.W.2d at 746. It is therefore irrelevant that the cash register was not opened and that defendant did not take any money or cigarettes from the station.

■ We believe there is substantial evidence that defendant and Newland intended to commit a theft. Circumstantial and direct evidence are equally probative and either are sufficient to support a conviction. Iowa R.App.P. 14(f)(16); *State v. Blair*, 347 N.W.2d 416, 420–21 (Iowa 1984). Several witnesses positively identified defendant as one of two young men seen loitering at the station on the morning of October 30. They came to the station twice that morning but did not buy gas or anything else from the store. The men's behavior made the victim and her coworker suspicious; the decedent wrote down the license number and the description of the car in case the police needed to be notified. The victim locked the cash register and hid the key, suggesting she feared that a robbery would occur.

There was also evidence of defendant's lack of and need for funds. Immediately after the murder neither defendant nor Newland had money to use a pay phone. Shortly thereafter, defendant asked his grandmother for money to go to South Dakota. Defendant had been staying at his friend's house until he obtained money to get a bus ticket. While the lack of needed funds, standing alone, does not prove an intent to commit a theft, it is evidence of a possible motive.

We agree with the State that the jury could infer from the defendant's need for funds and his "lack of legitimate purpose" —his loitering, his two appearances at the station that morning, his waiting nearly an hour until the victim was alone before the shooting—that he and Newland were planning a robbery. Certainly that was what the victim concluded before she was mur-

dered. The jury could also infer that defendant's failure to actually commit a theft was due to the unexpected arrival of another customer at the station and to the hidden cash register key, forcing him to leave empty handed. We therefore conclude that there was sufficient evidence to support the jury verdicts of robbery and felony murder predicated on robbery.

IV. *Lesser-included offense.* The trial court submitted for jury determination the offense of first-degree murder under two theories: (1) premeditated murder, section 707.2(1) and (2) murder while participating in a forcible felony, section 707.2(2). Defendant claims that the court erred by not submitting an instruction on the lesser-included offense of involuntary manslaughter as defined in Iowa Code section 707.5(1) (1987).

■■ In *State v. Jeffries,* 430 N.W.2d 728, 737 (Iowa 1988), our court modified its approach to the submission of lesser-included offenses. In *Jeffries* we stated that as a general rule a court must automatically instruct the jury on the lesser offense if it is solely composed of some, but not all, of the statutory elements of the greater offense, without an inquiry into whether there is a factual basis for the lesser. *Id.* The factual basis test must still be performed, however, when the lesser offense does not meet the statutory elements test but is made a lesser-included offense by statute. *Id.* In these situations the court must apply the factual test to determine if there is sufficient evidence to submit each of the elements only contained in the lesser offense to the jury. *Id.; State v. Royer,* 436 N.W.2d 637, 642–43 (Iowa 1989).

■■ An example of a crime made a lesser-included offense by law is involuntary manslaughter, which is an included offense of first-degree murder. Iowa Code § 707.5; *Jeffries,* 430 N.W.2d at 737; *Royer,* 436 N.W.2d at 642. Involuntary manslaughter occurs when a "person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape." § 707.5(1). Under this subsection manslaughter requires proof of the commission of a public offense other than a forcible felony or escape, an element not found in premeditated or felony murder. Thus, the question is whether there is substantial evidence that an offense, other than a forcible felony, caused the death of the victim.

The only offense relied upon by the State under felony murder was robbery, which is defined as a forcible felony. *See* Iowa Code § 702.11 (1987). Defendant urges that there is evidence of assault since an attempt to commit murder necessarily involves this offense. Such an assault must be a nonfelonious assault, however, as felonious assault is also defined as a "forcible felony." *Id.* In a similar case, where the defendant was charged with premeditated and felony murder based on robbery and robbery in the first degree, we held that the factual basis test was not met for involuntary manslaughter under section 707.5(1). *State v. Ware,* 338 N.W.2d 707, 715 (Iowa 1983); *see also State v. Winnett,* 442 N.W.2d 275, 277 (Iowa App.1989). We concluded that there was no evidence or contention of a public offense other than robbery. *Ware,* 338 N.W.2d at 715.

We come to the same conclusion here. Those acts required for the commission of the murder and robbery are forcible felonies. The victim was shot at close range under the left eye and again in her lower back as she lay on the floor. As in *Ware* we conclude that "the evidence here in no way factually supported [the] 'commission of a public offense *other than a forcible felony.*'" 338 N.W.2d at 715 (citing Iowa Code § 707.5(1)).

While we do not turn this issue on error preservation, we note that at trial no claim was made that an offense other than murder and robbery was committed. While defendant generally requested the court to instruct on manslaughter, he never suggested that assault would satisfy the requirements of section 707.5(1).

■■ Defendant is also charged with premeditated murder. In contrast to involuntary manslaughter, this requires a jury to find that the death was caused intentionally. *See* Iowa Code § 707.2(1). There is

no evidence that the defendant unintentionally caused the death of Marilyn Brisendine. The Iowa State Medical Examiner testified that the stippling found around the gunshot wounds indicated that the bullets were fired at close range. There were two bullets fired in two different places, suggesting that neither shot was unintentional. The findings are consistent with the conclusion that Ms. Brisendine was first shot in the face and then shot a second time in the back as she lay on the floor. Although the medical examiner concluded that the back wound was fatal, the fact that the victim was shot in the head suggests that the gunman was attempting to kill her.

 Defendant also contends that when the public offense alleged under section 707.5(1) is assault, we need not inquire whether there is a factual basis for involuntary manslaughter. Involuntary manslaughter would then meet the strict statutory elements test of *Jeffries.* We disagree. It is possible to commit the greater offense of murder, under either the theory of felony murder or premeditated murder, without also committing involuntary manslaughter as the lesser offense contains an element not required for either greater offense. Defendant therefore fails the statutory elements test of *Jeffries.*

Therefore, neither the factual basis nor the legal test is met under the facts of this case. The trial court did not err in refusing to submit an instruction on involuntary manslaughter to the jury.

We affirm the trial court on all counts.

AFFIRMED.