**IN THE COURT OF APPEALS OF IOWA**

No. 12-1915
Filed January 14, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**COLLIN MYLIK RUSH-BRANTLEY,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.


Defendant appeals his conviction for first-degree robbery.  **REVERSED AND REMANDED.**


G. Brian Weiler, Davenport, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Michael J. Walton, County Attorney, and Dion D. Trowers, Assistant County Attorney, for appellee.


Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

Collin Rush-Brantley appeals following his conviction for first-degree robbery, in violation of Iowa Code sections 711.1 and 711.2 (2011). He raises multiple claims, including: there is insufficient evidence of intent to commit a theft and of aiding and abetting to support his conviction, the State deprived him of a fair trial by committing misconduct,[1] counsel's failure to object to the jury instruction and general verdict form constituted ineffective assistance, and his sentence amounts to constituted cruel and unusual punishment.

## I. Background Facts and Proceedings

This court has previously affirmed the conviction of Nihjl Hoover, Rush-Brantley's codefendant, for robbery in the first degree. *See State v. Hoover,* No. 12-1815, 2013 WL 4506511, at *2 (Iowa Ct. App. Aug. 21, 2013). Our court summarized the facts in that case as follows:

> On September 9, 2011, Davenport Police Officer Jason Ellerbach (Ellerbach) was working in plain clothes as part of the department's Tactical Operations Bureau (TOB). Ellerbach was driving his unmarked car on Bridge Avenue at approximately 3:00 a.m. when he observed an individual crouched in the middle of the street.
> Stopping his car to assess the situation, Ellerbach observed a male in a white tank top and khaki shorts stepping into the street from behind a parked SUV. This individual would later be identified as Hoover. Hoover proceeded to walk towards Ellerbach paying no attention to the individual still crouched in the street. Ellerbach testified Hoover was walking towards him in an aggressive manner, and Ellerbach proceeded to back his car away. After looking behind him to ensure the street was clear, Ellerbach turned back towards Hoover and saw Hoover had a silver pistol in his hand

---

[1] Rush-Brantley claims the State misstated or inappropriately characterized certain facts—for example, whether Rush-Brantley was crouched or was lying down in the street. The facts as determined by the *Hoover* court will guide our analysis in this case.

pointed towards the unmarked police car. Ellerbach continued to back the car up until he was able to round a corner.

Ellerbach radioed the other members of the TOB unit and dispatch to inform them of the events. After losing sight of the men for a brief period of time, Ellerbach observed both men walking together down the street. Soon thereafter, TOB Officer Bryan Butt encountered Hoover who pulled the gun on Officer Butt. After a brief altercation, Hoover turned and ran with Officer Butt in pursuit. Hoover was subsequently apprehended by TOB officers. Hoover was unarmed when arrested, though a gun matching the description offered by Officers Ellerbach and Butt was located nearby. The other individual involved in the incident was later arrested.

*Id.* at *1.

The facts recited above focus on the issues raised by Hoover on his appeal—whether sufficient evidence supported the element of specific intent. We now focus on the facts as they relate specifically to Rush-Brantley's behavior and activities. Officer Ellerbach testified that a man, who had been crouched in the street at 3:00 a.m., was wearing black clothing and a red hat. There is no evidence of where he had been or whether he was with anyone before Ellerbach saw him in the street. There is no evidence as to how he got to the street or what purpose he had for being in the street or in the vicinity. There is no evidence as to his demeanor, whether he was under the influence of any substance, or any other facts arising from *his* conduct alone from which any conclusion could be reached as to the reason he was at that location at that time.

Ellerbach saw the man crouched in the street, and he stopped his vehicle. He then saw Hoover coming from behind a parked SUV near an adjacent sidewalk. There is no observed communication or interaction between Hoover and Rush-Brantley before or while Hoover approached the stopped vehicle.

"Hoover proceeded to walk towards Ellerbach paying no attention to the individual still crouched in the street." *Id.* After Ellerbach backed his vehicle around the corner, Hoover abandoned his interaction with the vehicle and its driver. Ellerbach later saw Hoover and Rush-Brantley walking down the street together.

In the meantime, other officers were closing in on the area. Officer Kean, driving an unmarked car but wearing a police vest drove within a vehicle's width of the men and identified the one wearing black clothing and a red hat as Rush-Brantley—Officer Kean was familiar with Rush-Brantley from when the officer was working off-duty security at a school. At some point, Hoover and the man in black clothing and a red hat walked into an alley and started to run. The officers lost sight of both men. The man in the black clothing and red hat was not seen again by the officers that morning. As stated above, Hoover was encountered by Officer Butt, Hoover pointed his gun at Butt, and then Hoover ran away. He was later apprehended and arrested. Rush-Brantley was never observed with Hoover when Hoover pointed the gun at Ellerbach, or later at Butt. Based on the events of that evening, an arrest warrant was issued for Rush-Brantley. He was arrested in January 2012. Neither Hoover nor Rush-Brantley ever made statements to the police, and neither one testified at their joint trial.

Rush-Brantley, like Hoover, was found guilty of robbery in the first degree.

## II. Standard of Review

The legal principles which govern our review of a motion for judgment of acquittal are well established.

> We will uphold the district court's denial of a motion for judgment of acquittal if there is substantial evidence in the record to support the defendant's conviction. "Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt." In deciding whether the evidence is substantial, we view the evidence in the light most favorable to the State and make all reasonable inferences that may fairly be drawn from the evidence.

*State v. McPhillips*, 580 N.W.2d 748, 752-53 (Iowa 1998) (internal citations omitted). The State concedes Rush-Brantley preserved error on this issue, and we agree. We limit our analysis to this issue as we find it dispositive.

## III. Analysis.

Rush-Brantley claims the district court erred in denying his motion for judgment of acquittal because the State failed to present sufficient evidence to support his conviction for first-degree robbery. Specifically, Rush-Brantley claims there is not sufficient evidence to show he intended to commit a theft or that he aided and abetted Hoover in committing first-degree robbery.

The general robbery statute, Iowa Code section 711.1, provides:

> 1. A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
> a. Commits an assault upon another.
> b. Threatens another with or purposely puts another in fear of immediate serious injury.
> c. Threatens to commit immediately any forcible felony.
> 2. It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

The aiding and abetting statute, Iowa Code section 703.1, provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as

principals. *The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it*, and does not depend upon the degree of another person's guilt.

(Emphasis added.)

In the case of *State v. Hearn*, 797 N.W.2d 577, 578 (Iowa 2011), the defendant was found guilty of aiding and abetting robbery arising out of a carjacking incident. Our supreme court repeated the often stated principles which will guide our analysis:

> To sustain a conviction under a theory of aiding and abetting, "the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act by either actively participating or encouraging it prior to or at the time of its commission." *State v. Ramirez*, 616 N.W.2d 587, 591–92 (Iowa 2000), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22, 25–26 (Iowa 2001). "Knowledge is essential; however, neither knowledge nor presence at the scene of the crime is sufficient to prove aiding and abetting." *State v. Barnes*, 204 N.W.2d 827, 828 (Iowa 1972). A defendant's participation may, however, be proven by circumstantial evidence. [*State v.*] *Doss*, 355 N.W.2d [874,] 878 [Iowa 1984)].
> . . . .
> Evidence of a defendant's "'*presence, companionship, and conduct before and after the offense is committed*' may be enough from which to infer a defendant's participation in the crime." *State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994) (emphasis added) (quoting *State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984)).

*Hearn*, 797 N.W.2d at 580-81 (footnote omitted).

In that case, Hearn had admitted to a series of facts that placed him with those who committed the carjacking prior to the incident and had admitted his knowledge of who was in the stolen car. *Id.* at 581. After the carjacking, Hearn was found in proximity to the scene of the carjacking and in close proximity to the stolen Grand Am. *Id.* While driving another vehicle, Hearn swerved at a

pursuing police officer in an attempt to obstruct the officer's pursuit of the Grand Am. *Id.* This evidence suggested Hearn was involved in the carjacking "because he was trying to help the principal carjackers escape the scene of the crime." *Id.* There was also evidence Hearn wanted to go to Peoria to see his girlfriend but that he did not have access to another vehicle. *Id.* Finding the circumstantial evidence provided substantial evidence to support the verdict, our supreme court summarized: "The district court relied on Hearn's actions before and after the carjacking to find that he aided and abetted robbery and theft." *Id.*

In *State v. Tangie,* 616 N.W.2d 564, 574–75 (Iowa 2000), the court concluded there was substantial evidence for the jury to find the defendant guilty of second-degree murder as an aider and abettor. Tangie had an unpleasant relationship with the victim, which she had been unable to terminate. *Tangie*, 616 N.W.2d at 574. Tangie had previously said she wished the victim were dead. *Id.* Schreiber, who did not even know the victim, had clubbed the victim to death with a pickax handle. *Id.* On the day of the murder Tangie and Schreiber were involved in a flurry of activity. *Id.* There was evidence from which the jury "could find that Tangie helped get the victim drunk and lured him to the scene where he was murdered. *Id.* Tangie also made an incriminating statement to a witness concerning bloody shoes she had thrown into the trash and 'kinda laughed' about it because the officers had taken the wrong shoes for examination." *Id.* at 575.

In *State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997),[2] defendant Carroll had arrived at a convenience store with the person who committed the robbery. He claimed they were only stopping for directions but had parked in a remote and inconvenient place, behind the store. *Jefferson*, 574 N.W.2d at 277. He admitted he saw the other man pull out a gun, demand money, and force the store clerk toward a back room. *Id.* Carroll did not leave, intervene, or protest. *Id.* "Instead he accompanied the gunman and [the clerk] to the hallway behind the counter." *Id.* After the gun misfired, the gunman turned to Carroll for assistance, an act the court found supported an inference that Carroll actually owned or furnished the pistol. *Id.* Carroll and the gunman left the scene together. *Id.* "Given this proof of Carroll's presence, countenance, and conduct before and after the robbery, a reasonable jury could find Carroll guilty of robbery under Iowa Code sections 711.1 and 711.2 as an aider and abettor." *Id.*

In *State v. Brant*, 295 N.W.2d 434, 436-37 (Iowa 1980), our supreme court was satisfied that the record established the defendant aided and abetted LeRoy Rand in committing a robbery, and ultimately a murder as Rand murdered a person during the commission of the robbery. The court explained:

> The record in this case is contrary to defendant's position that he did not aid and abet the robbery. The records show that the defendant furnished and operated the automobile involved, owned and furnished the gun and ammunition used, planned the robbery with LeRoy Rand, advised Rand it wasn't necessary to have the gun loaded to commit the robbery, and positioned the automobile so that the pair could make their getaway after the robbery was committed. Neither the defendant nor LeRoy Rand had any money

---

[2] In this opinion, our supreme court affirmed the convictions of two defendants, Jefferson and Carroll, following their joint trial.

at the time and the robbery was a planned intentional act of the defendant and LeRoy Rand to obtain money.

*Brant*, 295 N.W.2d at 436.

In each of the foregoing cases, the defendant did not commit the crime as a principal. But in each case, there was evidence—direct or circumstantial—of the defendant's direct involvement in the crime. There was evidence of actions and communications with the principal before, during, and/or after the crime was committed. There was evidence from which inferences could be made as to the aider and abettor's knowledge and intent.

The State relies on the case of *State v. Boley*, 456 N.W.2d 674, 679-80 (Iowa 1990), in its argument that the circumstances provided sufficient evidence of Rush-Brantley's guilt. The *Boley* court summarized the facts and the reasonable inferences that could be drawn from those facts as follows:

> Several witnesses positively identified defendant as one of two young men seen loitering at the station on the morning of October 30. They came to the station twice that morning but did not buy gas or anything else from the store. The men's behavior made the victim and her coworker suspicious; the decedent wrote down the license number and the description of the car in case the police needed to be notified. The victim locked the cash register and hid the key, suggesting she feared that a robbery would occur.
>
> There was also evidence of defendant's lack of and need for funds. Immediately after the murder neither defendant nor Newland had money to use a pay phone. Shortly thereafter, defendant asked his grandmother for money to go to South Dakota. Defendant had been staying at his friend's house until he obtained money to get a bus ticket. While the lack of needed funds, standing alone, does not prove an intent to commit a theft, it is evidence of a possible motive.
>
> We agree with the State that the jury could infer from the defendant's need for funds and his "lack of legitimate purpose"—his loitering, his two appearances at the station that morning, his waiting nearly an hour until the victim was alone before the shooting—that he and Newland were planning a robbery. Certainly

that was what the victim concluded before she was murdered. The jury could also infer that defendant's failure to actually commit a theft was due to the unexpected arrival of another customer at the station and to the hidden cash register key, forcing him to leave empty handed. We therefore conclude that there was sufficient evidence to support the jury verdicts of robbery and felony murder predicated on robbery.

*Boley*, 456 N.W.2d at 679-80.

In the present case, there is no evidence of the activities of, or of any communication between, Hoover and Rush-Brantley before Ellerbach arrived on that street. There is no evidence of communication between Hoover and Rush-Brantley during Hoover's encounter with Ellerbach. There is no evidence that Rush-Brantley did anything during Hoover's encounter with Ellerbach—the encounter encompasses the actions that are the primary evidence of robbery. After Hoover disengaged with Ellerbach, Hoover and Rush-Brantley walked down the street together. They did not run until it was evident to them that people— they may have concluded police officers—were flooding the area. By the time Officer Butt ran after Hoover in the alley, announced he was a police officer, and encountered Hoover pulling a gun on him, Rush-Brantley was nowhere to be found.

The threshold question is whether there was sufficient evidence from which a jury could find beyond a reasonable doubt that Rush-Brantley intended to participate in the crime for which Hoover was convicted or that he had knowledge Hoover intended to commit the crime. We understand the suspicion attendant to Rush-Brantley crouching in the middle of the street as Hoover came out from behind a parked vehicle, and the suspicion that results from his walking

away from the scene with Hoover, and then running down an alley. But do those circumstances rise to the level of substantial evidence of Rush-Brantley's intent or knowledge? Or do those circumstances only support conjecture and speculation as to Rush-Brantley's intent and knowledge as it relates to Hoover approaching Ellerbach's car with a gun pointed?

The State's analysis of the facts and its theory of the robbery focus on the conduct of Hoover and how Rush-Brantley's conduct of crouching in the middle of the road made it possible for Hoover to approach Ellerbach's vehicle and brandish the gun. Our court has already determined there was sufficient evidence to convict Hoover. The State's theory as to Rush-Brantley's culpability is tied strongly to the conduct of Hoover. The mere fact that Hoover was able to take advantage of Rush-Brantley's crouching in the street in order for Hoover to proceed the way he did offers little more than speculation as to Rush-Brantley's intent to have a role in Hoover's actions walking toward the car, Hoover's use of a gun to face off with Ellerbach or his knowledge of Hoover's specific intent to commit any of the elements of robbery.

It is not enough for the State to prove that Hoover took advantage of Ellerbach's response to Rush-Brantley crouching in the street. Yes, it is doubtful that Hoover would have been walking in the street with a gun pointed at Ellerbach or his vehicle but for Ellerbach stopping when he observed a man crouched in the street. Our law does not, however, impose criminal liability on Rush-Brantley simply because Hoover was able to take advantage of circumstances created by Rush-Brantley; what is necessary is that there be

sufficient evidence Rush-Brantley intended to participate in the crime or had knowledge of Hoover's intent to commit the crime. Viewed in the light most favorable to the State, the limited evidence of Rush-Brantley's activities before, during, and after Hoover committed the robbery is not sufficient evidence of circumstances that could support a finding beyond a reasonable doubt that Rush-Brantley had the requisite intent and knowledge.

We cannot say affirmatively that Rush-Brantley is innocent of aiding and abetting Hoover; but that is not the test. The test is whether the State presented sufficient evidence from which a jury could find him guilty beyond a reasonable doubt. The mere fact that a jury did find him guilty—as it did in this case, where Hoover and Rush-Brantley were tried together—however, does not answer the legal question as to whether the evidence was sufficient to have ever been presented to the jury. If we allow ourselves to be influenced—or our analysis to be dictated—by a jury's guilty verdict, then no denial of a motion for judgment of acquittal could ever be successful, and no sufficiency-of-the-evidence or weight-of-the-evidence challenge could ever be successful. While our case law reveals that such motions are not often successful, we must evaluate each motion for judgment of acquittal on its own merits as though the case had not been submitted to a jury. After our evaluation of the facts, we conclude this is one of those rare cases in which the motion for judgment of acquittal should have been granted as to Rush-Brantley.

## IV. Conclusion

On our review of the facts which show Rush-Brantley's alleged role in the robbery committed by Hoover, viewed in the light most favorable to the State, we determine that the evidence as to Rush-Brantley is not sufficient evidence to support a finding beyond a reasonable doubt that Rush-Brantley aided and abetted Hoover in committing the robbery. Accordingly, we conclude the motion for judgment of acquittal should have been granted. We reverse and remand for an order vacating the judgment and sentence in this case.

**REVERSED AND REMANDED.**

McDonald, J., concurs; Bower, J., dissents.

**BOWER, J.** (dissenting)

I respectfully dissent. We are to review challenges to the sufficiency of the evidence in a criminal case for the correction of errors at law. *State v. Heuser*, 661 N.W.2d 157, 165 (Iowa 2003). A jury's verdict will be upheld if it is supported by substantial evidence. *Id.* at 165-66. "Substantial evidence means evidence that could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Shortridge*, 589 N.W.2d 76, 80 (Iowa Ct. App. 1998). We view the evidence in the light most favorable to the State. *State v. Padavich*, 536 N.W.2d 743, 751 (Iowa 1995) ("The jury may give the evidence the weight the evidence should receive.").

In examining the evidence in a light most favorable to the State, I would note the following: The Davenport Police Department Tactical Operations Bureau was patrolling a high crime area undercover at 3:00 a.m. While driving, a police officer came upon a person, later identified as the defendant, in the street. The defendant was crouched over with his face turned away from the undercover vehicle. The defendant's body was not in a position consistent with being injured or in trouble. Immediately as the officer slowed his vehicle for the safety of the person in the street, a second person, found by the jury to be the defendant's partner in crime, appeared from behind a parked SUV pointing a gun at the officer. The second individual showed no interest in the person crouched in the street and was not waiving down the officer requesting assistance, but was arguably looking for a victim. After being aggressively pursued, the officer managed to retreat by backing his car up around a corner. Shortly thereafter, the

defendant and the second individual are seen walking together, and neither are showing signs of either injury or fear. Upon the defendant being recognized by a police officer and while police lights and sirens are engaged, the defendant and the second individual stop walking and instead run in separate directions. The police found the gun brandished by the second individual next door to the Rush-Brantley home, in the neighborhood of the robbery. Items recovered by the police from the trash at the Rush-Brantley home contain identifiable finger/palm prints of the defendant's partner in crime, i.e., the second individual.

This information was presented to the jury at a joint trial. After denying four motions for judgment of acquittal, the trial court found that the evidence presented could convince a rational fact finder that the defendant was guilty beyond a reasonable doubt. Because I agree with the district court and conclude substantial evidence supports the jury verdict, I would affirm the conviction.