# IN THE COURT OF APPEALS OF IOWA

No. 23-1112
Filed July 3, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROCKY DEAN TRUJILLO,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.


        A defendant challenges his convictions for first-degree murder and first-

degree robbery. **AFFIRMED.**


        Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney

General, for appellee.


        Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

Around 3:00 a.m. on February 15, 2021, a masked gunman entered a convenience store with his handgun already pointed at a store employee restocking items near the counter. Almost immediately upon entering the store, the gunman, later identified as Rocky Trujillo, shot the employee. Trujillo then approached a customer standing near the shot employee, demanded the customer's cell phone while holding the gun to the customer's head, grabbed the phone out of the customer's hand, threw it on the floor, and stomped on it. Trujillo then walked into the kitchen area near the back room where the shot employee had managed to scoot, panned the kitchen area with his gun, and returned to look at the cash registers, which were closed. Trujillo went back into the kitchen area, still waving the gun, and entered the walk-in freezer. After a few moments in the walk-in freezer, he shot at the glass window of the freezer door before exiting the freezer and quickly leaving the store. In the parking lot, he encountered another employee. He approached the employee, threatened her with his gun, and initiated a physical altercation. The employee gained the upper hand long enough to extricate herself from the fight and run inside the store. Trujillo fled the scene. The employee Trujillo had shot died from the gunshot wound.

The State charged Trujillo with first-degree murder, two counts of first-degree robbery, going armed with intent, and assault while committing a felony. A jury found him guilty of all five charges. Trujillo appeals his convictions for first-

degree murder and first-degree robbery,[1] arguing the evidence was not sufficient to support the convictions.[2]

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Warren*, 955 N.W.2d 848, 856 (Iowa 2021). We uphold the verdict if it is supported by substantial evidence. *Id.* "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020)). In applying the standard, "[w]e view 'the evidence in the light most favorable to the verdict, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record.'" *Id.* (quoting *Folkers*, 941 N.W.2d at 338). Trujillo did not object to the jury instructions on malice aforethought, first-degree robbery, or on inferring intent, so these instructions become the law of the case for purposes of a challenge to the sufficiency of the evidence. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims.").

I. **First-Degree Robbery**

Trujillo was charged with two counts of robbery—one for robbing the employee and one for robbing the customer. Trujillo alleges that the State failed to prove he intended to commit theft for each robbery charge, which would be a

---

[1] A heading in Trujillo's appellate brief suggests he is challenging his conviction for going armed with intent. Trujillo's counsel conceded at oral argument that he is not challenging his conviction for that crime, so we do not address it.

[2] Trujillo's appellate brief makes passing reference to the weight of the evidence. At oral argument Trujillo's counsel clarified that he is not challenging the weight of the evidence, so we review only for sufficiency of the evidence.

dispositive shortcoming in the State's proof, as the marshaling instructions for the robbery charges required the State to prove that Trujillo had the specific intent to commit a theft. *See* Iowa Code § 711.1(1) (2021) (defining robbery to include having the intent to commit a theft).

Trujillo's intent to steal from the convenience store employee can be reasonably inferred from his actions upon entering the store. A person commits theft by taking possession or control of the property of another, or property in possession of another, with the intent to permanently deprive the other thereof. Iowa Code § 714.1(1); *State v. Schminkey*, 597 N.W.2d 785, 785 (Iowa 1999). Intent can rarely be proven by direct evidence and instead must often be inferred. *State v. Taylor*, 689 N.W.2d 116, 129 (Iowa 2004). The jury was instructed that it may infer intent from the facts and circumstances surrounding the act. *See Schminkey*, 597 N.W.2d at 789 (noting that we may rely on "the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances" to assess intent).

In *State v. Boley*, gas station employees noticed the defendant and a co-conspirator loitering near the business. 456 N.W.2d 674, 676 (Iowa 1990). A customer later saw the defendant quickly leave the gas station and jump into a car. *Id.* The customer went inside to find the gas station clerk suffering from gunshot wounds to her back and face. *Id.* The supreme court determined that this evidence, combined with the defendant's need for funds, was sufficient to support an inference that he intended to commit a robbery at the gas station, even though he took nothing from the store. *Id.* at 679–80.

In *State v. Hoover*, an officer in an unmarked vehicle noticed a person crouched in the middle of the street and saw the defendant step into the street from behind another vehicle. No. 12-1851, 2013 WL 4506511, at *1 (Iowa Ct. App. Aug. 21, 2013). The defendant walked toward the unmarked police car aggressively and with a gun pointed at the car. *Id.* The officer backed his car down the street and around a corner before alerting other officers to the situation. *Id.* Both individuals later walked down the street and encountered another officer, at whom the defendant pointed his gun. *Id.* The defendant and officer briefly fought before the defendant fled. *Id.* Although there was no evidence of motive, we likened the situation to that in *Boley*, finding that from these facts "[it] is reasonable to conclude the two individuals were working in concert to force vehicles to stop so [the defendant] could use the gun to commit a theft." *Id.* at *2.

Like in *Boley* and *Hoover*, Trujillo did not complete a theft, but enough evidence exists to show he intended to do so. He entered the store with his hood up and wearing a black mask over his mouth and nose. He walked in with his handgun raised, pointing it at the customer and employee. After shooting the employee, doing a quick sweep of the kitchen area, and destroying the customer's phone, he proceeded immediately to the cash registers. At trial, an employee explained that the registers cannot be pulled open and must be opened with a button on a touch screen. A rational juror could conclude that this setup stumped Trujillo in the moment, preventing him from trying to access the cash registers. *See Boley*, 456 N.W.2d at 680 ("The jury could also infer that defendant's failure to actually commit a theft was due to the unexpected arrival of another customer at the station and to the hidden cash register key."). While the employee testified

that most convenience-store robbers seek cash or merchandise, the fact that Trujillo did not appear to be interested in merchandise does not preclude a rational juror from concluding Trujillo was at the store to try to steal something. A juror could reasonably conclude from these facts that Trujillo used the gun to intimidate the employee and customer, to prevent resistance to a theft, and to enable a search of the store for either something to steal or an employee to help him steal from the cash register or safe. Although neither the intimidation nor theft appeared to go to plan, Trujillo's actions still support an inference that he intended to commit theft. *See id.* at 679 ("A conviction of robbery requires proof of the intent to commit a theft and not proof of the actual theft.").

Trujillo reasons that the State cannot prove an intent to commit theft without specifying what property Trujillo intended to steal. Trujillo cites no authority to support this proposition, and we note that this argument makes little sense when all that is required is an intent to steal and not a completed theft. *See* Iowa Code § 711.1. A juror could reasonably conclude from Trujillo's actions that he intended to commit theft, even if it is not obvious what he intended to steal. *See Boley*, 456 N.W.2d at 676–80; *Hoover*, 2013 WL 4506511, at *1–2.

As to the robbery of the customer, Trujillo argues the evidence only shows he intended to prevent the customer from calling the police, not that his intent was to commit theft. Trujillo's argument fails to address the fact that he only needed to take possession of the customer's property with the intent to permanently deprive the customer of that property. *See* Iowa Code § 714.1. Trujillo's intent to permanently deprive the customer of the phone can be inferred from his action of destroying it. *See Taylor*, 689 N.W.2d at 132 (noting that juries may presume a

person intends the natural consequences of the person's actions). Trujillo demanded the customer's phone while pointing a gun at his head. The customer turned over the phone, and when Trujillo took possession of the phone, he destroyed it, thereby permanently depriving the customer of the use of his phone. The natural consequence of stomping on the customer's phone is that the customer is permanently prevented from using it. *See State v. Catlett*, No. 14-0500, 2015 WL 408071, at *4 (Iowa Ct. App. Jan. 28, 2015) (finding sufficient evidence to support a theft conviction when defendant grabbed another's phone and slammed it to the ground to prevent the person from calling the police). Substantial evidence establishes that Trujillo intended to commit theft when he took and destroyed the customer's phone.

There is sufficient evidence supporting both robbery convictions, so we affirm those convictions.

## II. First-Degree Murder

Trujillo was charged with first-degree murder under the theory of felony murder. He contends that the State failed to prove he acted with malice aforethought because the evidence shows no hatred or evil intent toward the employee he shot. Trujillo also suggests that his first-degree murder conviction should not stand because the State failed to prove he was committing robbery at the time he killed the employee—which would be a dispositive failure of proof, as the State was required to prove the predicate felony of robbery. Because we have already determined there was sufficient evidence supporting the finding that he committed two robberies, we reject Trujillo's challenge to the sufficiency of the

proof of the predicate felony for felony-murder. So, we focus our discussion on his challenge to the malice element.

The Iowa Code defines murder as killing "another person with malice aforethought either express or implied." Iowa Code § 707.1. "[A] person commits murder in the first degree under the felony-murder rule in Iowa when the person kills another person (with expressed or implied malice aforethought) while participating in a nonexempt forcible felony." *State v. Tribble*, 790 N.W.2d 121, 125 (Iowa 2010); *see also* Iowa Code §§ 707.1, .2(1)(b). Robbery is a nonexempt forcible felony. Iowa Code § 702.11. The murder marshaling instruction required the jury to find Trujillo shot and killed the employee, acted with malice aforethought, was participating in a robbery, and acted without justification. The instructions defined malice as

> a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of the defendant, and the means used in doing the wrongful or injurious act.

*Accord State v. Green*, 896 N.W.2d 770, 779–80 (Iowa 2017). The instructions also defined malice aforethought as "a fixed purpose or design to do some physical harm to another which exists before the act is committed." *State v. Rhode*, 503 N.W.2d 27, 39 (Iowa Ct. App. 1993). The jury was informed that it could infer the defendant acted with malice from the defendant's use of a dangerous weapon, *See Green*, 896 N.W.2d at 780 ("[T]he jury may infer the defendant acted with malice aforethought by using a dangerous weapon, the natural consequence of

which is physical harm or death."), and that "a gun, by law, is a dangerous weapon."

At trial, the State presented the surveillance video from the convenience store showing the robbery. The video shows Trujillo entering the store holding a handgun that he pointed at the store's occupants. The video shows a plume of smoke erupting from the gun, followed by the employee collapsing to the floor. A firearm matching the description provided by the customer was recovered from the convenience store parking lot. Substantial evidence supports the conclusion that a firearm was used during the robbery and from that fact the jury was permitted to infer malice aforethought. By proving Trujillo's use of a dangerous weapon, the State presented enough evidence for a fact finder to conclude Trujillo acted with a fixed purpose to harm another person.

## III.    Conclusion

Because substantial evidence supports Trujillo's convictions for first-degree murder and two counts of first-degree robbery, we affirm.

**AFFIRMED.**