# IN THE COURT OF APPEALS OF IOWA

No. 14-1209
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KENNETH WAYNE TURNER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Davis County, Joel D. Yates,

Judge.

        Defendant appeals his convictions for assault with intent to commit sexual

abuse and simple assault.  **AFFIRMED.**

        Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee.

        Considered by Vogel, P.J., Bower, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

Defendant Kenneth Turner appeals his convictions for assault with intent to commit sexual abuse and simple assault. Turner contends there is not substantial evidence in the record to support the intent element of the charge of assault with intent to commit sexual abuse. He also contends the convictions violate his constitutional right against double jeopardy. Because we find there is substantial evidence and the two convictions arise from two different factual situations, we affirm Turner's convictions.

## I. Background Facts & Proceedings

A.T. was a seventeen-year-old boy whose life was in turmoil in September 2013. His mother had been sent to prison, the house he was living in burned down, and he moved in with his grandmother, who had problems with alcohol. A.T. met Turner at the Milton Fall Festival, and Turner offered him some work. Turner was an acquaintance of A.T.'s grandmother.

A few days later, Turner picked up A.T. at his grandmother's house and drove him to a nearby cemetery, where A.T. worked on cleaning out Turner's car. A.T.'s great-uncle showed up and got into an argument with A.T. When Turner and A.T. returned to the grandmother's house she told A.T. he should go live with Turner. A.T. went with Turner because he had nowhere else to go.

When they arrived at Turner's house that evening, Turner told A.T. to strip naked and lay on the couch because he needed to do a complete physical

examination.[1]  Turner put on blue, latex-free gloves and touched A.T.'s genitals, stating he was looking for sexually transmitted diseases.  He had A.T. bend over and cough, allegedly to check for hernias.  Turner then gave A.T. a shot behind his right ear, which made A.T. dizzy and light-headed.

Turner told A.T., who was still naked, to go into the bathroom, fill the bathtub, and wait for him.  Turner had A.T. stand in the bathtub while Turner sat on a stool and washed A.T.'s entire body, including his genitals and buttocks.  Turner told A.T. he needed to teach him the proper way to wash his penis.  A.T. testified, "He grabbed my penis.  He took the washcloth and rubbed it in a circular motion."  A.T. told him to stop, and Turner said, "[I]t's my house, my rules."

Turner then left the room and got a leather hog strap.  He told A.T. he had not done anything wrong, but he wanted A.T. to know what would happen if he did anything wrong at his house.  Turner made sure A.T.'s body was wet before hitting him repeatedly with the metal end of the hog strap.  A.T.'s thigh was bruised and bleeding as a result of the beating.

After this, Turner had A.T. wash himself all over while Turner sat on the stool and watched.  Turner took A.T. to a bedroom, where he told A.T. he needed to sleep naked or he would be hit with the hog strap again.  Turner gave A.T. a back rub, telling him this would happen every night, whether his behavior was good or bad.  A.T. woke up multiple times during the night and saw Turner watching him.

---

[1]  Turner testified he had been a registered nurse.  At the time of the incidents Turner was not employed in the medical field and his nursing license had lapsed several years previously.

4

According to A.T., Turner engaged in hand to genital contact six times in total. Turner would watch him while he showered, urinated, and slept. Also, Turner made him mow a rural property clothed only in his underwear. Turner commented to A.T. he was not a homosexual and A.T. should not think that of him. A.T. planned to leave Turner once he received a bus ticket from his step-father.

Turner restricted A.T.'s use of his cell phone, but he was sometimes able to use his phone. He texted his girlfriend, Alicia, that he had been kicked out of his grandmother's house and that he had been beaten by Turner, sending her pictures of his injuries.[2] A.T. told Alicia that Turner watched him urinate and shower. Eventually he texted her he felt like killing himself.

On September 27, 2013, Alicia drove with a friend to Bloomfield, where Turner lived, to look for A.T. She saw Turner's vehicle, followed it, and watched it pull into his garage and the garage door close. She believed she saw A.T. get out of Turner's vehicle. Alicia knocked on Turner's front door but got no response. Turner had A.T. go down to the basement, where he locked A.T. in a bathroom. Alicia went to the Bloomfield Police Department and asked for a welfare check on A.T. Alicia texted A.T. that the police were on the way. A.T. then broke out of the bathroom and came out of the house. He immediately told an officer, "Dude, get me out of here." He was placed at a youth shelter.

Turner was interviewed by officers the next day. Turner acknowledged he had done a "head to toe" physical examination of A.T. the first night he was at Turner's house, including an inspection of A.T.'s penis. He also acknowledged

---

[2] These pictures were admitted into evidence as State's exhibits 13 and 14.

he had shown A.T. how to wash his penis. He claimed A.T. gave him the washcloth and asked him to do it for him. Turner admitted hitting A.T. with the hog strap.

Turner was charged with six counts of sexual abuse in the third degree and kidnapping in the third degree. During the criminal trial, Turner testified he told A.T. to strip naked the first night he was at Turner's house. Turner stated he did a physical examination of A.T. but did not touch his penis. He also testified he showed A.T. how to wash his penis but again denied touching A.T.'s penis. Turner further testified he hit A.T. with the hog strap while A.T. was naked, but that A.T. consented.

The jury found Turner guilty on Count II of the lesser-included offense of assault with intent to commit sexual abuse and on Count III guilty of the lesser-included offense of assault.[3] The jury returned not guilty verdicts on the other charges. The court denied Turner's motion for a new trial. Turner was sentenced to two years in prison on Count II and six months in jail on Count III. The sentences were suspended, and Turner was placed on probation. The court also imposed sex-offender-registration requirements. Turner now appeals.

## II.    Sufficiency of the Evidence

Turner claims there is not substantial evidence in the record to support the intent element of the charge of assault with intent to commit sexual abuse. He asserts A.T.'s testimony about what occurred was inconsistent while his own

---

[3]   Assault with intent to commit sexual abuse and assault are lesser included offenses of third-degree sexual abuse. *State v. Vargason*, 462 N.W.2d 718, 719 (Iowa Ct. App. 1990) (citing *State v. Turecek*, 456 N.W.2d 219, 222 (Iowa 1990) and *State v. McNitt*, 451 N.W.2d 824, 825 (Iowa 1990)).

testimony was consistent. Turner states there was no evidence showing he intended to commit a sex act. He claims, "Although there may be evidence of an assault, there is no evidence that this was for the reason of committing a sex act."

We review claims challenging the sufficiency of the evidence in a criminal case for the correction of errors at law. *State v. Dalton*, 674 N.W.2d 111, 116 (Iowa 2004). We will uphold the jury's verdict when it is supported by substantial evidence. *State v. Hagedorn*, 679 N.W.2d 666, 668 (Iowa 2004). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010); *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). We consider all of the evidence in the record, not just the evidence supporting the defendant's guilt. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012); *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). We view the evidence in the light most favorable to the State, "including legitimate inferences and presumptions that may fairly be deduced from the record evidence." *State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005) (quoting *Quinn*, 691 N.W.2d at 407).

Under Iowa Code section 709.11 (2013), assault with intent to commit sexual abuse occurs when a person (1) commits simple assault under section 708.1, (2) with the intent to commit sexual abuse, (3) by force or against the will of the victim. *State v. Beets*, 528 N.W.2d 521, 523 (Iowa 1995). A defendant's intent to commit sexual abuse may be "inferred from the facts and circumstances surrounding his actions." *State v. Radeke*, 444 N.W.2d 476, 478 (Iowa 1989); *State v. Most*, 578 N.W.2d 250, 254 (Iowa Ct. App. 1998). "Because it is difficult

to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and inferences that can be drawn from that evidence." *State*, 791 N.W.2d at 837 (citing *State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996)). "Evidence sufficient to prove necessary specific intent includes sexual comment, touching in a sexual manner, attempt to remove clothing, or an act in any other way which would indicate a plan to engage in sexual activity." *Most*, 578 N.W.2d at 254.

For this charge, the assault occurred when Turner touched A.T.'s genitals, which was physical contact that was insulting or offensive to him. *See* Iowa Code § 708.1(1). We will focus on the incident that occurred in the bathroom on the first night A.T. was at Turner's house. Turner had previously told A.T. to take off all of his clothes. A.T. was told to stand in the bathtub while Turner sat on a stool and washed A.T.'s entire body, including his genitals and buttocks. Both A.T. and Turner testified Turner told A.T. that Turner needed to teach A.T. how to wash his penis. A.T. stated Turner then grabbed A.T.'s penis and rubbed it with a washcloth in a circular motion. A.T. testified he told Turner to stop, but Turner said, "[I]t's my house, my rules." Thus, the evidence supports a finding there was an assault and it was by force or against the will of A.T.

We turn to the issue of intent. The jury could well have found Turner's statement that he needed to teach A.T. how to wash his penis not credible. A.T. was then seventeen years old. There was no evidence in the record to show he was not able to take care of his own personal hygiene. Furthermore, the jury could have found A.T.'s testimony that Turner grabbed his penis and rubbed it with a washcloth more credible than Turner's statement to officers that A.T. gave

Turner the washcloth and asked him to wash his penis for him or his testimony during the trial that he instructed A.T. on how to clean his penis but did not touch it. The credibility of the witnesses was for the jury to decide. *See State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999). The jury may resolve inconsistencies in the record as it sees fit. *State v. Mitchell*, 568 N.W.2d 493, 504 (Iowa 1997).

In considering the sufficiency of the evidence to show Turner's intent, we also look at the fact that on the same evening Turner had already touched A.T.'s penis and testicles.[4] Additionally, Turner's acts of watching A.T. shower, urinate, and sleep, as well as the back rubs, give insight into his intent. We further note Turner himself recognized there was a sexual connotation to his actions, based on his statement to A.T. that he was not a homosexual and A.T. should not think that of him.

We conclude there is sufficient evidence in the record to support the jury's finding that Turner was guilty of assault with intent to commit sexual abuse. The circumstantial evidence and inferences that can be drawn from the evidence support a finding Turner had the intent to commit sexual abuse. *See Hennings*, 791 N.W.2d at 837.

### III. Double Jeopardy

Turner contends his convictions for assault with intent to commit sexual abuse and assault violate his double jeopardy rights. He argues there is not a factual basis in the record to find him guilty of both charges. He states he cannot

---

[4] The jury could have found Turner's statement that he needed to conduct a medical examination of A.T was not credible. While Turner testified he had been a registered nurse, he was not employed in the medical field at the time of the incident. The jury may not have believed Turner's assertion he needed to check A.T.'s genitals for sexually-transmitted diseases, or that such diseases could be diagnosed from a visual inspection.

be convicted of assault with intent to commit sexual abuse and assault based on the same act. He asserts he cannot be sentenced for both charges.[5]

Our review of double jeopardy challenges is de novo. *State v. Kramer*, 760 N.W.2d 190, 193-94 (Iowa 2009). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense. *State v. Schmitz*, 610 N.W.2d 514, 515 (Iowa 2000). When a defendant has been charged with multiple violations of the same statute, we consider "whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . . If the latter, there can be but one penalty." *State v. Velez*, 829 N.W.2d 572, 581 (Iowa 2013) (quoting *Schmitz*, 610 N.W.2d at 576).

If a defendant engages in distinct acts of physical contact that meet the definition of a sex act, then each contact is sufficient for a charge of sexual abuse. *State v. Constable*, 505 N.W.2d 473, 477-78 (Iowa 1993). Also, there is no double jeopardy violation if a defendant is charged with multiple counts of assault arising from distinct factual circumstances. *State v. Delap*, 466 N.W.2d 264, 266 (Iowa Ct. App. 1990). The Iowa Supreme Court has stated, "Even though the charges allege the *same kind* of conduct, so long as they are not based on the *same* conduct, no double jeopardy problem is presented." *Schmitz*, 610 N.W.2d at 517.

---

[5] The State claims Turner did not raise this issue before the district court, and therefore, it has not been preserved for our review. *See State v. Mulvany*, 600 N.W.2d 291, 293 (Iowa 1999). To the extent Turner is claiming his sentence is illegal, however, that issue may be raised at any time. Iowa R. Crim. P. 2.24(5); *State v. Allen*, 601 N.W.2d 689, 690 (Iowa 1999).

The factual circumstances supporting Turner's conviction for assault are distinct from the factual circumstances supporting his conviction for assault with intent to commit sexual abuse. The assault conviction is supported by the evidence Turner struck A.T. repeatedly with the metal end of a hog strap. "[M]ultiple acts can constitute separate and distinct criminal offenses." *State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014). The assault that is the basis for the assault conviction is separate and distinct from the assault portion of the conviction for assault with intent to commit sexual abuse, which was Turner's act of grabbing A.T.'s penis.

We conclude Turner is not being punished twice for the same offense. "Where the sentences imposed are based on distinct acts, there is no double jeopardy problem." *State v. Jacobs*, 607 N.W.2d 679, 688 (Iowa 2000); *see also State v. Smith*, 573 N.W.2d 14, 19 (Iowa 1997) ("Because the sentences imposed on Smith were based on two distinct acts, there is no double jeopardy problem."). We determine Turner's right against double jeopardy was not violated.

We affirm Turner's convictions.

**AFFIRMED.**